840 F.2d 1131
 127 L.R.R.M. (BNA) 3010
 The UNITED STATES DEPARTMENT OF NAVY and Philadelphia Naval
Shipyard, Petitioners,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
The UNITED STATES DEPARTMENT OF NAVY and Philadelphia Naval
Shipyard, Respondents,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner.
 Nos. 87-3005, 87-3064.
 United States Court of Appeals,
Third Circuit.
 Argued Sept. 10, 1987.
Decided March 2, 1988.
Rehearing Denied May 2, 1988.
 
 Richard K. Willard, Asst. Atty. Gen., Al J. Daniel, Jr. (argued), Leonard Schaitman, Appellate Staff Civil Div., Dept. of Justice, Washington, D.C., for petitioners.
 Ruth E. Peters, Solicitor, William E. Persina (argued), Deputy Solicitor, Pamela P. Johnson, Federal Labor Relations Authority, Washington, D.C., for respondent.
 Mark D. Roth, General Counsel, Joseph F. Henderson, Staff Counsel, American Federation of Government Employees, AFL-CIO, Washington, D.C., for amicus curiae American Federation of Government Employees, AFL-CIO.
 Before SLOVITER and STAPLETON, Circuit Judges, and BROTMAN, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 The legal issue before us, whether a federal agency must provide a union representing its employees with the names and home addresses of all bargaining unit members, implicates both labor law principles and privacy considerations. The Federal Labor Relations Authority (FLRA) held that the Philadelphia Naval Shipyard (Shipyard), an employer governed by the Federal Service Labor-Management Relations Statute (Fed'l L-M Statute), committed an unfair labor practice by failing to disclose such information. The Shipyard petitions for review of the FLRA's decision, and the FLRA cross-petitions for enforcement.
 
 I. Background
 
 2
 The Metal Trades Council (Union) is the sole bargaining representative for approximately 7,000 non-supervisory, ungraded employees of the Shipyard, of whom 4,400 are dues-paying members. The workers were covered by a three-year agreement which came into effect on March 12, 1982, and which thereafter remained in effect from year to year in the absence of notice from either party.
 
 
 3
 In February of 1984, the Union's president wrote to the Shipyard commander requesting the names and home addresses of all members of the bargaining unit in order to "carry out it's [sic] entitled responsibilities, within the scope of collective bargaining." Joint App. at 78. The president claimed that it was "necessary that this Council have the opportunity to carry out full and proper discussions and likewise receive information from all bargaining unit employees. This Council requires feedback from employees of this bargaining unit in order to frame bargaining proposals and to undertake it's [sic] multi-faceted representational obligations." Id. The commander denied the request, citing the availability of various alternative means of communication with workers. Subsequently the Union filed an unfair labor practice charge with the FLRA under 5 U.S.C. Sec. 7116 (1982), alleging a violation of 5 U.S.C. Sec. 7114(b)(4) (1982), and the FLRA issued a complaint.
 
 
 4
 After hearing and briefing, an FLRA Administrative Law Judge (ALJ) issued a recommended decision and order containing detailed findings of fact relating to the ability of the Union to communicate with shipyard workers. Briefly, the ALJ found that employees were dispersed among numerous worksites in the seven-square-mile facility and that both their work schedules and their means of travel to and from work made it impractical for the Union to communicate through handbilling or to organize mass meetings. The Union had some access to thirty-five bulletin boards in the plant, but these were not well-located to reach the majority of workers and had not proven an effective means of communication. The Union had no access to the internal mail system. The Union was allowed access to the Shipyard weekly newspaper but the Shipyard had the right, apparently not exercised, to edit any submissions. The Union also distributed its own newspaper at drop-off points throughout the shipyard. Concluding that existing means of communication were not sufficient to allow the Union to carry out its responsibilities, the ALJ found that the refusal of the Shipyard to disclose the names and addresses was an unfair labor practice, and recommended that the FLRA order disclosure.
 
 
 5
 In its first hearing of the Shipyard case, the FLRA disagreed with the ALJ. The FLRA relied on its earlier decision in Farmer's Home Administration Finance Office, St. Louis, Mo., 19 F.L.R.A. 195 (1985) (FHAFO I ), where it had found that the employees' strong privacy interest outweighed any benefit to the Union in release, especially in light of what it then stated was the availability of alternative means of communication. 19 F.L.R.A. at 197-98. Therefore, the FLRA concluded in FHAFO I that release of the names and addresses of employees was prohibited by the Privacy Act, 5 U.S.C. Sec. 552a (1982 & Supp. IV 1986).
 
 
 6
 The Union petitioned for review of the FLRA's adverse Shipyard decision to the Court of Appeals for the District of Columbia. Prior to completion of briefing, that court granted the FLRA's motion to remand the case to allow consideration of whether disclosure of employee names and addresses was a "routine use" exempted under the Privacy Act, 5 U.S.C. Sec. 552a(b)(3) (1982).
 
 
 7
 Thereafter, the FLRA reversed the position it had taken in FHAFO I. In Farmer's Home Administration Finance Office, St. Louis, Mo., 23 FLRA 788 (1986) (FHAFO II ), which also had been remanded to the agency to consider whether disclosure of the names and addresses was authorized as a "routine use", the FLRA abandoned its earlier position. It agreed instead with the Second Circuit's intervening opinion that the public interest in the requested disclosure outweighed the relevant privacy interest. Id. at 793 (citing American Fed'n of Gov't Employees, Local 1760 v. FLRA, 786 F.2d 554, 556 (2d Cir.1986)). In addition, the FLRA determined that the employees' names and addresses are exempt from the Privacy Act as a "routine use". 23 F.L.R.A. at 793-94. The FLRA thus concluded that the release of the information is not prohibited by law, is necessary for unions to fulfill their duties under the Fed'l L-M Statute, and meets the other requirements for release of that statute. Id. at 798. The FLRA also decided that the unique advantages of direct mail generally made consideration of alternatives unnecessary. Id. at 796-97.
 
 
 8
 Upon the remand in this case, the FLRA, without independent analysis, relied on FHAFO II to conclude that the Shipyard's failure to furnish the Union with the names and home addresses of the employees in the bargaining unit constituted an unfair labor practice.
 
 II. Standard of Review
 
 9
 Judicial review of FLRA determinations is subject to the terms of section 706 of the Administrative Procedure Act (APA). See 5 U.S.C. Sec. 7123(c) (1982). We may set aside agency action only if we find it to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," as specified in the APA, 5 U.S.C. Sec. 706(2)(A). See Bureau of Alcohol, Tobacco and Firearms v. FLRA, 464 U.S. 89, 97 n. 7, 104 S.Ct. 439, 444 n. 7, 78 L.Ed.2d 195 (1983).
 
 
 10
 The FLRA argues that its construction of its own enabling statute is entitled to particular deference. The Supreme Court has held that when Congress has not directly spoken on the question at issue, a court should "not simply impose its own construction on the statute" administered by an agency, but should accord "considerable weight" to an agency's construction of its own administrative scheme. Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 842-44, 104 S.Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984). With respect to the FLRA, the Court has stated that "the FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the Act." Bureau of Alcohol, Tobacco and Firearms, 464 U.S. at 97, 104 S.Ct. at 444.
 
 
 11
 Even when particular deference is owed to the agency because of its expertise, courts must not "rubber-stamp" administrative decisions that are inconsistent with a statutory mandate or that frustrate a statutory policy. Id. at 96-98, 104 S.Ct. 443-45 (quoting NLRB v. Brown, 380 U.S. 278, 291-92, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965)). Also, no deference is owed an agency's interpretation of a general statute. See Professional Airways Systems Specialists v. FLRA, 809 F.2d 855, 857 n. 6 (D.C.Cir.1987); New Jersey Air Nat'l Guard v. FLRA, 677 F.2d 276, 282 n. 6 (3d Cir.), cert. denied, 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982). But see United States Dep't of Health & Human Services v. FLRA, 833 F.2d 1129, 1135 (4th Cir.1987). In particular, the FLRA has no special competence in applying the provisions of the Freedom of Information Act (FOIA) and the Privacy Act that are at issue here. Cf. Department of the Air Force v. Rose, 425 U.S. 352, 379, 96 S.Ct. 1592, 1607, 48 L.Ed.2d 11 (1976) (FOIA requires de novo judicial review of agency's denial of disclosure); Grasso v. IRS, 785 F.2d 70, 73 (3d Cir.1986) (same). We will, therefore, give considerable deference to the FLRA's reading of the Fed'l L-M Statute, but will not grant it any presumption of special expertise in applying the Privacy Act or FOIA.
 
 III. Discussion
 
 12
 In 1978, when Congress codified the law of labor-management relations in the federal public sector, see Title VII of the Civil Service Reform Act of 1978, Pub.L. No. 95-454, 92 Stat. 1111, 1192 (codified as amended at 5 U.S.C. Secs. 7101-7135 (1982 and Supp. IV 1986)) (Fed'l L-M Statute), it expressly set forth its finding that "labor organizations and collective bargaining in the civil service are in the public interest," 5 U.S.C. Sec. 7101(a). Congress created the Federal Labor Relations Authority to "provide leadership in establishing policies and guidance" on matters relating to federal employer-union relationships. 5 U.S.C. Sec. 7105(a)(1). The statute also provides for exclusive recognition of duly selected labor organizations. 5 U.S.C. Sec. 7111. A labor organization accorded such exclusive representation has the obligation to act for "all employees in the unit" without regard to labor organization membership. 5 U.S.C. Sec. 7114(a)(1).
 
 
 13
 One of the specified obligations imposed on a federal agency[1] is to supply the certified bargaining agent, "to the extent not prohibited by law," with any requested data which is normally maintained by the agency in the regular course of business and which is reasonably available and necessary for full and proper collective bargaining. 5 U.S.C. Sec. 7114(b)(4). Because the Shipyard contends that disclosure of bargaining unit employees' names and addresses is "prohibited by law," specifically by the Privacy Act, 5 U.S.C. Sec. 552a, we consider that issue first.
 
 A. Privacy Act
 
 14
 The Privacy Act was designed to restrict the collection, maintenance, use or dissemination by federal agencies of personal information about individuals. Privacy Act of 1974, Pub.L. No. 93-579, Sec. 2, 88 Stat. 1896, 1896 (codified at 5 U.S.C. Sec. 552a note (1982)). The Act requires an agency to give an individual the opportunity to gain access to and request correction of personal information maintained by the agency. 5 U.S.C. Sec. 552a(d). In general, it prohibits the non-consensual disclosure of information which is contained in an agency's records unless such disclosure is covered by one of the statutory exceptions. 5 U.S.C. Sec. 552a(b). In FHAFO II, 23 F.L.R.A. 788, the FLRA held that disclosure of employees' names and addresses to a union representing such employees falls within two of the exceptions specified in the Privacy Act: that permitting disclosure of information required to be released to the public under FOIA, 5 U.S.C. Sec. 552a(b)(2), and that permitting disclosure for what would be a "routine use", 5 U.S.C. Sec. 552a(b)(3).
 
 1. Privacy Interest in Names and Addresses
 
 15
 FOIA, 5 U.S.C. Sec. 552 (1982 and Supp. IV 1986), is a general disclosure statute with certain limited and narrowly construed exemptions. Exemption 6 exempts from release "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. Sec. 552(b)(6). We have held that lists of names and addresses are "files" within the meaning of Exemption 6. Wine Hobby USA, Inc. v. IRS, 502 F.2d 133, 135 (3d Cir.1974); cf. United States Dep't of State v. Washington Post Co., 456 U.S. 595, 599-602, 102 S.Ct. 1957, 1960-62, 72 L.Ed.2d 358 (1982) ("similar files" incorporates any record which, like medical or personnel files, contains information whose release could damage an individual).
 
 
 16
 It follows that in determining whether the release of such data is barred by Exemption 6, we must determine whether the material sought is subject to privacy protection and, if so, whether the invasion of privacy is not clearly unwarranted. See, e.g., Wine Hobby, 502 F.2d at 135. This inquiry requires a balancing of the public interest served by disclosure against the harm to the individual whose privacy is breached. See Department of the Air Force v. Rose, 425 U.S. 352, 372, 96 S.Ct. 1592, 1604, 48 L.Ed.2d 11 (1976); Committee on Masonic Homes of R.W. Grand Lodge v. NLRB, 556 F.2d 214, 220 (3d Cir.1977). We are mindful, however, that any consideration of exemptions under FOIA begins with "a well-known presumption in favor of disclosure." Committee on Masonic Homes, 556 F.2d at 218; accord Rose, 425 U.S. at 360-62, 96 S.Ct. at 1598-1600. Ideally, the Act provides "a workable formula which encompasses, balances, and protects all interests, yet places emphasis on the fullest responsible disclosure." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965).
 
 
 17
 In arguing that the employees' privacy interest in their names and addresses is paramount, the Shipyard stresses the importance of personal privacy in our law. We do not disagree with, and indeed echo, the Shipyard's statement that "[o]ur system [of government] seeks to maximize individual liberty, of which privacy is an essential part." Petitioner's Brief at 30. Unquestionably, individuals have some privacy interest in their home addresses. Indeed, in Wine Hobby, 502 F.2d at 136-37, we held that the names and addresses of home wine producers who registered with the United States Bureau of Alcohol, Tobacco and Firearms should not be disclosed to someone who requested the information solely for private commercial exploitation. Nonetheless, we recognized that the invasion of privacy effected by such disclosure is not as serious as it would be by the disclosure of more personal information. Id. at 137.
 
 
 18
 The four courts of appeals that have upheld the FLRA's position that the employees' names and addresses should be disclosed to the requesting unions have varied in their evaluation of the strength of the privacy interest at stake. See American Fed'n of Gov't Employees, Local 1760 v. FLRA, 786 F.2d 554, 556 (2d Cir.1986) ("privacy interest of the average employee in his address is "not particularly compelling"); United States Dep't of the Air Force v. FLRA, 838 F.2d 229, 232 (7th Cir.1988) ("[b]oth the secrecy and the seclusion components of privacy ... are minuscule" where the data in question are already widely dissimenated); United States Dep't of Health and Human Services v. FLRA, 833 F.2d 1129, 1135-36 (4th Cir.1987) (deferring to the FLRA's evaluation); USDA v. FLRA, 836 F.2d 1139, 1143-44 (8th Cir.1988) ("employees have a cognizable privacy interest in their home addresses"); see also Minnis v. USDA, 737 F.2d 784, 787 (9th Cir.1984), cert. denied, 471 U.S. 1053, 105 S.Ct. 2112, 85 L.Ed.2d 477 (1985); Heights Community Congress v. Veterans Administration, 732 F.2d 526, 529 (6th Cir.), cert. denied, 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984).
 
 
 19
 Although it is true that individuals may have varying degrees of sensitivity about disclosure of their identities and home addresses, this court's case law recognizes that individuals generally have a meaningful interest in the privacy of information concerning their homes which merits some protection. See Wine Hobby, 502 F.2d at 136-37; see also United States v. Liebert, 519 F.2d 542, 548-49 & n. 15 (3d Cir.), cert. denied, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 301 (1975). It is therefore necessary to weigh that interest against the public interest in disclosure. See Committee on Masonic Homes, 556 F.2d at 220.
 
 2. Public Interest in Disclosure
 
 20
 The Shipyard views the public interest required to support disclosure under Exemption 6 of FOIA as narrow, limited to "an interest of or benefit to the commonweal, or body politic, concerning the operation or conduct of government or its agencies." Petitioner's Brief at 26. It argues that even if having a mailing list of all bargaining unit employees might make the union more effective, enhanced effectiveness of collective bargaining is not the kind of interest served by FOIA. We reject that crabbed view of public interest.
 
 
 21
 Congress has explicitly articulated its view that the public interest is served by collective bargaining on behalf of government employees, 5 U.S.C. Sec. 7101(a). It follows that if disclosure of the requested information will further collective bargaining, such disclosure would be in the public interest,[2] and such interest would have to be weighed against the relevant privacy interests under the balancing analysis required by the Supreme Court for FOIA cases. See Rose, 425 U.S. at 371-73, 96 S.Ct. at 1603-05.
 
 
 22
 In considering whether release of the names and addresses does in fact advance collective bargaining in the federal workplace, we must give considerable deference to the FLRA's determination that it does. See FHAFO II, 23 F.L.R.A. at 796-98. This is a matter particularly within its expertise. See USDA, 736 F.2d at 1143-44 cf. United States Dep't of Health & Human Services, 833 F.2d at 1135-36 (deferring to FLRA's conclusion that release "furthers the underlying Congressional policy of balancing competing interests to effectuate an efficient government"). The FLRA has accepted the Union's position that it must communicate with bargaining unit members in order to ascertain their wishes as to matters to be considered in bargaining. Even were we to evaluate that justification independently, rather than with the deference to which the FLRA's determination is entitled, we would also conclude that the minimal invasion of privacy effected by disclosure of the unit employees' names and addresses is far outweighed by the public interest to be served by such disclosure. See Local 1760, 786 F.2d at 557; cf. United States Dep't of the Air Force, 838 F.2d at 232-33 (criticizing close evaluation of requestor's interest as unjustified by FOIA but denominating union's interest as "legitimate").[3]
 
 
 23
 The mere fact that the Union as an organization may benefit through its communication with non-member unit employees by increasing its membership does not diminish the public's interest in the use of government-held data to further federal collective bargaining. This case is thus unlike Wine Hobby, 502 F.2d at 137, and Masonic Homes, 556 F.2d at 220-21, where it was the total absence of a public benefit, not merely the presence of a private one, that tipped the scales. Because the requisite balancing of privacy interests and the public interest leads us to agree with the FLRA that disclosure would not constitute such a "clearly unwarranted invasion of personal privacy" as to fall within Exemption 6 of FOIA, it follows that release of the data requested is required by FOIA and therefore is not prohibited by the Privacy Act.[4]
 
 B. Necessity of the Data
 
 24
 The Shipyard contends that even if disclosure is not prohibited by law, the Union has not shown that the names and addresses of unit employees meet all the other requirements of 5 U.S.C. Sec. 7114(b)(4)(B). Although the Shipyard concedes that the data is "reasonably available," it contends that the names and addresses are not "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." 5 U.S.C. Sec. 7114(b)(4)(B). It argues that adequate alternative means of communication are available and that the term "collective bargaining" under the statute "refer[s] only to the actual process of contract negotiations and agreement respecting 'conditions of employment,' and not any subsequent representational or other activities on behalf of its members." Petitioner's Brief at 45-46 (quoting 5 U.S.C. Sec. 7103(a)(12)). It contends that inasmuch as an employee's name and home address is not one of the "conditions of employment," it is not subject to release under section 7114(b)(4)(B).
 
 
 25
 Both of these objections have been rejected by every court of appeals that has decided the name and home address issue. See USDA v. FLRA, 836 F.2d 1139, 1142 (8th Cir.1988); United States Dep't of Health and Human Services v. FLRA, 833 F.2d 1129, 1133 (4th Cir.1987); cf. Local 1760, 786 F.2d at 557 (upholding without detailed explanation the ALJ's finding that data met the requirements for release of Sec. 7114(b)(4)); United States Dep't of the Air Force v. FLRA, 838 F.2d 229 (7th Cir.1988) (following Local 1760 ). We agree.
 
 
 26
 The statute defines "collective bargaining" as
 
 
 27
 the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees ... to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached ...;
 
 
 28
 5 U.S.C. Sec. 7103(a)(12).
 
 
 29
 The FLRA, to whom we owe deference on the construction of the statute, has taken a broad view of the scope of collective bargaining and what is necessary to facilitate it. See, e.g., United States Equal Opportunity Commission, 20 F.L.R.A. 357, 359 (1985) (ordering disclosure of data needed for deciding whether to file a grievance under collective bargaining agreement); National Weather Service, Silver Spring, Maryland, 21 F.L.R.A. 455, 456 (1986) (information relating to employee appraisal system necessary for "impact and implementation" bargaining); see also American Fed'n of Gov't Employees v. FLRA, 811 F.2d 769, 774-75 (2d Cir.1987) (union request related to existing or potential grievance was within Sec. 7114(b)(4)).
 
 
 30
 In FHAFO II, the FLRA drew on private sector precedent under the National Labor Relations Act holding that the release of names and addresses of employees is a part of the statutory requirement to bargain in good faith. See FHAFO II, 23 F.L.R.A. at 797 n. 3 (citing Prudential Ins. Co. of America v. NLRB, 412 F.2d 77, 84 (2d Cir.) (union entitled to list of names and addresses for communication purposes), cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969), and NLRB v. Acme Industrial Co., 385 U.S. 432, 436, 87 S.Ct. 565, 568, 17 L.Ed.2d 495 (1967) (duty to bargain under the NLRA "unquestionably extends beyond the period of contract negotiations and applies to labor-management relations during the term of an agreement") (citations omitted)). NLRB cases, although lacking the full force of precedent in a Fed'l L-M Statute matter, provide useful guidance. Library of Congress v. FLRA, 699 F.2d 1280, 1286-87 (D.C.Cir.1983); see United States Dep't of Health and Human Services v. FLRA, 833 F.2d 1129, 1132 (4th Cir.1987). Because a union must have the information necessary to fulfill its statutory responsibility to represent all employees in the unit, we conclude that the FLRA did not err in holding that the requested information is necessary within the meaning of 5 U.S.C. Sec. 7114(b)(4)(B).
 
 
 31
 The Shipyard also argues that the FLRA has impermissibly established a per se rule requiring release to unions of the requested names and addresses without consideration of alternatives. In FHAFO II, the FLRA decided that there will ordinarily be valid reasons for a union to communicate directly with unit employees, and that disclosure of their names and addresses is necessary to facilitate such communication. The FLRA explained its position as follows:
 
 
 32
 [I]t is not necessary for us to examine the adequacy of alternative means in cases involving requests for names and home addresses because the communication between unit employees and their exclusive representative which would be facilitated ... is fundamentally different from other communication through alternative means which are controlled in large part by the agency. When using direct mailings, the content, timing, and frequency of the communication is completely within the discretion of the union and there is no possibility of agency interference.... Further, direct mailings reach unit employees in circumstances where those employees may consider the union's communication without regard to the time constraints inherent in their work environments....
 
 
 33
 FHAFO II, 23 F.L.R.A. at 796-97. While some of this language in isolation may suggest that the FLRA has created the "presumption" posited by the Shipyard, it argues that in each case it has considered the alternative means available. Transcript of Oral Argument at 33-34. Thus, we understand that an agency in an appropriate case may argue that under the special circumstances there, the alternative means are adequate.
 
 
 34
 The FLRA's determination that direct mail by a union to the unit employees has unique advantages is not unreasonable. Although the Shipyard stresses that this represents a change from the agency's earlier position, the FLRA has explained that it changed its initial position in light of amicus briefs on the name and address issue received pursuant to a notice in the Federal Register, 51 Fed.Reg. 21,416 (June 12, 1986). Since notice and comment are designed to give the agency an opportunity to reconsider its position, we cannot fault it when it does precisely that. Moreover, because in this case the FLRA's conclusion that the alternative means of communication are inadequate is amply supported by the record, we need not decide whether alternative means might, under a different fact pattern, require a different result.
 
 IV. Conclusion
 
 35
 We have found no justification for disturbing the FLRA's conclusion that the Shipyard's refusal to release to the Union the names and addresses of unit employees constituted an unfair labor practice because release of such material was required by 5 U.S.C. Sec. 7114(b)(4)(B). We have rejected the Shipyard's contention that such release is prohibited by the Privacy Act and that disclosure of such material is not necessary for effective collective bargaining under the Fed'l L-M Statute. The Shipyard's petition for review will be denied and the order of the FLRA requiring the Shipyard to cease and desist will be enforced.
 
 
 
 *
 Hon. Stanley S. Brotman, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 The statute defines "agency" broadly to include all executive departments such as the Shipyard, except for those specifically excluded. See 5 U.S.C. Sec. 7103(a)(3)
 
 
 [2]
 We recognize that the D.C. Circuit, in another context, found the requisite public interest in FOIA's general premise that there is a public interest in disclosure of government-held information. See Reporters Committee for Freedom of the Press v. DOJ, 831 F.2d 1124 (D.C.Cir.1987). Judge Starr, in dissent, argued that the majority's position, that all releases are per se in the public interest, reduces the balancing test to a single-factor test. Id. at 1128-29. Because we ground our conclusion that disclosure is warranted on Congress' own expression of the public interest in the Fed'l L-M Statute, we need not address the concern of the Reporters majority about the absence of congressional standards by which to determine the public interest in disclosure. Id. at 1126
 
 
 [3]
 The Eighth Circuit, holding that there was no public interest in the release of names of those employees who did not wish their names released, remanded the case to the FLRA to establish a procedure for deletion of the information as to those employees. USDA v. FLRA, 836 F.2d 1139 (8th Cir.1988). That approach is analogous to the one this court took in United States v. Westinghouse Electric Corp., 638 F.2d 570, 580-82 (3rd Cir.1980), where the information to be disclosed was considerably more personal and sensitive than that at issue here. Nonetheless, concern for those employees wishing to remain unidentified does not require a remand here because there is no evidence in the record that there are any such employees. In addition, we note that the Authority itself has stated that employees who so desire may request "that they be deleted from the Union's mailing list." FHAFO II, 23 F.L.R.A. at 793. We assume that the interests of such reluctant employees, if any, will be appropriately accommodated, and leave for another day resolution of that issue if and when it is presented directly
 
 
 [4]
 The other exception to the Privacy Act on which the FLRA relied was the "routine use" exception, 5 U.S.C. Sec. 552a(b)(3), allowing "the use of such record for a purpose which is compatible with the purposes for which it was collected," id. Sec. (a)(7). As a consequence of our decision that release of the data falls within FOIA, and therefore is not barred from disclosure by the Privacy Act, there is no need to consider whether the release of the data would also be allowable under the routine use exception