**DEFENSE CRIMINAL INVESTIGATIVE SERVICE (DCIS), DEPARTMENT OF DEFENSE (DOD), Petitioner in No. 87–3758,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Respondent,**

**American Federation of Government Employees (AFGE), Intervenor.**

**DEFENSE CRIMINAL INVESTIGATIVE SERVICE, DEPARTMENT OF DEFENSE, Respondent,**

v.

**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner in No. 87–3863.**

Nos. 87–3758, 87–3863.

United States Court of Appeals, Third Circuit.

Argued June 9, 1988.

Decided Aug. 18, 1988.

Richard K. Willard, Asst. Atty. Gen., William Kanter, John P. Schnitker (argued), Attys., Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., for petitioner in No. 87–3758 and respondent in No. 87–3863.

Ruth E. Peters, Sol., William E. Persina, Deputy Sol., Arthur A. Horowitz, Associate Sol., William R. Tobey (argued), Federal Labor Relations Authority, Washington, D.C., for respondent in No. 87–3758 and petitioner in No. 87–3863.

Martin R. Cohen (argued), Staff Counsel, American Federation of Government Employees, AFL-CIO, Local 2567, Philadelphia, Pa., Mark D. Roth, Gen. Counsel, American Federation of Government Employees, AFL-CIO, Local 2567, Washington, D.C., for intervenor.

Before BECKER, STAPLETON and GREENBERG, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge.

The Defense Criminal Investigative Services (DCIS) petitions for review of a Federal Labor Relations Authority (FLRA) decision that a DCIS investigator is "a representative of the agency" for purposes of 5 U.S.C. § 7114(a)(2), a statute which entitles any federal employee in a bargaining unit to the presence of a representative from his or her union when being questioned by a representative of the employing agency about a matter that could lead to the imposition of disciplinary sanctions. The FLRA cross-petitions for enforcement of its order. We find the FLRA's interpretation of § 7114(a)(2)(B) reasonable, and will therefore deny review and grant enforcement.

## I.

The DCIS, one of the myriad subdivisions of the Department of Defense (DOD), is under the authority of the DOD's Office of the Inspector General (DOD–OIG). Established by a 1982 amendment to the Inspector General Act of 1978 (IG Act), 5 U.S.C. app. 3, the DOD–OIG's main purpose is to combat fraud, waste, and abuse in DOD programs and operations. It does this by means of investigations and audits. Within the DOD–OIG, the DCIS has the main responsibility for criminal investigations. The DCIS regularly furnishes the information it obtains in investigative interviews to other subdivisions within the DOD which might be affected by such information, though it is not required to do so and does not make any recommendations as to appropriate use of the information. The DCIS Director reports directly to the DOD Inspector General. The DOD Inspector General, like every other Inspector General, has a great deal of independence. Under 5 U.S.C. app. 3 § 3(a):

> Each Inspector General shall report to and be under the general supervision of the head of the establishment involved or, to the extent such authority is delegated, the officer next in rank below such head, but shall not report to, or be subject to supervision by, any other officer of such establishment. Neither the head of the establishment nor the officer next in rank below such head shall prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation, or from issuing any subpoena during the course of any audit or investigation.

The DOD Inspector General is subject to a specific exception to § 3(a) in that the Secretary of Defense may interfere with DOD–OIG affairs under specified circumstances, in connection with national security issues. 5 U.S.C. app. 3 § 8(b). The DCIS has no collective bargaining agreement with any labor union.

The Defense Logistics Agency (DLA), another subdivision of the DOD, is under the authority of the Assistant Secretary of Defense for Manpower, Reserve Affairs and Logistics. The DLA has a collective bargaining agreement with the American Federation of Government Employees (AFGE). Raymond Nazare and Irene Fedoriw are employed by the DLA and are AFGE members.

In January of 1985, a gunshot was allegedly fired through a window of the home of Otto Miller, a supervisor of a subdivision of the DLA. Miller notified both the local police department and a superior in the DLA of this incident. In accordance with established procedure, the matter was referred by Miller's DLA superiors to the regional office of the DCIS. The DCIS was also told by the DLA that Nazare and Fedoriw were thought to have been involved in the gunshot incident.

DCIS agent Katherine Johnson was assigned to investigate the case. Accompanied by a member of the local police force, Johnson went to question Nazare and Fedoriw at the DLA office where they

worked. At this time, a DLA official told Johnson that under the collective bargaining agreement between the DLA and the AFGE, a DLA employee was entitled to have union representation during questioning if the employee so requested and if the employee reasonably believed the questioning could lead to disciplinary action. Johnson, after consulting by telephone with a DCIS superior, informed the DLA official that the DLA–AFGE collective bargaining agreement did not give Nazare and Fedoriw any right to union representation at interviews conducted by the DCIS.

The DLA provided Johnson with a room in which to conduct the interviews, and summoned the employees for questioning. At their interviews, which were conducted separately, Nazare and Fedoriw each requested union representation. In each case Johnson denied the request and proceeded with the interview. An unfair labor practice complaint was subsequently issued by the FLRA against the DCIS based on Johnson's refusal to permit union representation at the interviews of Nazare and Fedoriw.

Under the Federal Labor–Management Relations Act (FLMRA), 5 U.S.C. § 7101 *et seq.:*

(2) An exclusive representative of an appropriate unit in an agency shall be given the opportunity to be represented at—

(A) any formal discussion between one or more representatives of the agency and one or more employees in the unit or their representatives concerning any grievance or any personnel policy or practices or other general condition of employment; or

(B) An exclusive examination of an employee in the unit by a representative of the agency in connection with an investigation if—

(i) the employee reasonably believes that the examination may result in disciplinary action against the employee; and

(ii) the employee requests representation.

5 U.S.C. § 7114(a)(2).

▮ The purpose of § 7114(a)(2)(B) was to confer upon federal employees the same

rights that employees in the private sector enjoy under *NLRB v. Weingarten, Inc.,* 420 U.S. 251, 95 S.Ct. 959, 43 L.Ed.2d 171 (1975). *See Internal Revenue Service v. FLRA,* 671 F.2d 560, 563 (D.C.Cir.1982). In *Weingarten,* the Supreme Court held that § 7 of the National Labor Relations Act entitles employees in the private sector to refuse to submit to an investigatory interview without a union representative being present. After *Weingarten,* employer representatives investigating employee conduct must, when an employee makes a valid request for union representation, grant the request, discontinue the interview, or offer the employee the choice of continuing the interview unrepresented or having no interview. This is known as the *Weingarten* rule.

A violation of § 7114(a)(2)(B) constitutes an unfair labor practice under § 7116 of the FLMRA, which provides that:

(a) For the purpose of this chapter, it shall be an unfair labor practice for an agency—

(1) to interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter;

.    .    .    .    .

(8) to otherwise fail or refuse to comply with any provision of this chapter.

The only provision of these statutes at issue here is whether DCIS investigator Johnson was "a representative of the agency" within the meaning of § 7114(a)(2)(B).

The FLRA Administrative Law Judge who heard the unfair labor practice complaint found that the DCIS had not violated § 7114(a)(2)(B). In the ALJ's view, the DLA was the "agency" referred to by § 7114(a)(2)(B) and the DCIS was "so independent within DOD" that it could not be considered a "representative" of the DLA. The ALJ therefore found that no unfair labor practice had occurred, and recommended dismissal of the complaint.

While the FLRA agreed with the ALJ that the DCIS and the DLA were separate

organizations within the DOD and that the DCIS was not a "representative" of the DLA, the FLRA construed the statute to mean that the DOD was the "agency" referred to by § 7114(a)(2)(B), and accordingly found that a DCIS investigator was a "representative of the agency." The bases for the FLRA's conclusion were the definition of "agency" given by § 7103(a)(3), and the nature of the interviews conducted by Johnson. According to the FLRA:

> DCIS, as an organizational component of the Department of Defense was acting as a "representative of the agency," that is, DOD, within the meaning of section 7114(a)(2)(B). Clearly, DOD is an "agency" within the definition of that term in section 7103(a)(3) of the Statute as the parties have acknowledged in the complaint and answers in this case. As the investigative arm of DOD, DCIS was conducting an investigation into alleged criminal activity involving DLA employees. That a criminal investigation may constitute an "examination in connection with an investigation" was recognized by the Authority in the Internal Revenue Service case [23 FLRA No. 108 (1986)] ... and is not in dispute in this case. Accordingly, we find that each of the interviews with the employees constituted an examination in connection with an investigation within the meaning of section 7114(a)(2)(B) of the Statute at which the employees were entitled to union representation, upon request.

28 FLRA No. 150, app. at 45. By way of remedy for the violation of the statute, the FLRA ordered the DCIS to cease and desist, and to inform its employees by posted notice of the DCIS' obligation to comply with § 7114(a)(2)(B).

The DCIS advances several arguments in challenging the FLRA's conclusion. It contends that the "agency" referred to by § 7114(a)(2)(B) is the governmental entity with which the union has a collective bargaining agreement, in this instance the DLA. It further argues that even if the relevant "agency" is the DOD, the DCIS is so independent of the management of that agency that it cannot be considered a "representative" of the DOD. Finally, the

DCIS maintains that it cannot perform its function if union employees whom it wishes to question are allowed to have a union representative present to aid them during the investigation. We have jurisdiction over this matter pursuant to 5 U.S.C. § 7123.

## II.

We first address the appropriate scope of review. Judicial review of FLRA determinations is conducted in accordance with the standards of § 706 of the Administrative Procedure Act. *See* 5 U.S.C. § 7123(c). We may set aside agency action only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." In determining whether FLRA action is "in accordance with the law," we must give deference to the FLRA's interpretation of the FLMRA because " 'the FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the Act.' " *United States Dep't of the Navy v. FLRA*, 840 F.2d 1131, 1134 (3d Cir.1988), *quoting Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). As we have noted, the primary issue in this case is the meaning of the phrase "representative of the agency" in § 7114(a)(2)(B) of the FLMRA, and the FLRA's view on that issue is entitled to deference. Whether or not we would take the same view without the agency's assistance, we must accept its view if it is a reasonable interpretation of the FLMRA. *See Bureau of Alcohol, Tobacco and Firearms*, 464 U.S. at 97, 104 S.Ct. at 444 (agency construction of its own statute entitled to deference if "reasonable and defensible"); *National Treasury Employees Union v. FLRA*, 767 F.2d 1315, 1318 (9th Cir.1985) (deference due to FLRA's reasonable construction of FLMRA).

A federal agency frequently is required to interpret its own statute in the context of other federal statutes. In some instances, it must resolve disputed issues

about the meaning of those other statutes. When this occurs, we are not required to defer to the agency's resolution of those issues. *U.S. Dep't of the Navy*, 840 F.2d at 1134. Similarly, when an agency resolves an arguable conflict between another statute and its own, we are required to make a wholly independent analysis of that issue. *New Jersey Air Nat'l Guard v. FLRA*, 677 F.2d 276, 282 n. 6 (3d Cir.), *cert. denied* 459 U.S. 988, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982); *Department of the Navy, Military Sealift Command v. FLRA*, 836 F.2d 1409, 1410 (3d Cir.1988).

In arguing that it is not a "representative" of the DOD (Section IV, *infra*) and that the FLRA's interpretation of § 7114(a)(2)(B) conflicts with the IG Act (Section V, *infra*), the DCIS relies upon the above-quoted section of the IG Act that removes the DOD–OIG from the supervision of any DOD officer other than the Secretary of Defense or the next in command and directs that neither of them "shall prevent or prohibit the Inspector General from ... carrying out ... any audit or investigation." According to the DCIS, these provisions were intended to create "an independent investigatory office at the Department of Defense which would not be subject to interference by any other agency programmatic concerns, including federal labor relations concerns." Appellant's Brief at 26. While the FLRA did not address this contention in its decision, we assume that it was tacitly rejected by the FLRA. We agree with the DCIS that it would be inappropriate for us to give deference to this rejection. We nevertheless reject the DCIS' broad reading of these statutory provisions as unsupported by the text and legislative history of the IG Act. As we pointed out in *United States v. Westinghouse*, 788 F.2d 164, 165 (3d Cir. 1986), the purpose of these provisions was to insulate Inspector Generals from pressure from agency management which might attempt to cover up its own fraud, waste, ineffectiveness, or abuse. Thus, in this case as in *U.S. Dep't of the Navy*, we defer to the FLRA's interpretation of the FLMRA but not to its reading of other statutes.

## III.

■ Where the proper construction of a statute is in question, "our starting point must be the language employed by Congress." *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). The FLMRA defines the term "agency" as follows:

(3) "agency" means an Executive agency (including a nonappropriated fund instrumentality described in section 2105(c) of this title and the Veterans' Canteen Service, Veterans' Administration), the Library of Congress, and the Government Printing Office, but does not include—

(A) the General Accounting Office;

(B) the Federal Bureau of Investigation;

(C) the Central Intelligence Agency;

(D) the National Security Agency;

(E) the Tennessee Valley Authority;

(F) the Federal Labor Relations Authority; or

(G) the Federal Service Impasses Panel.

5 U.S.C. § 7103(a)(3).

The definition of "Executive agency" is found in 5 U.S.C. § 105:

For the purposes of this title [5], "Executive agency" means an Executive department, a Government corporation, and an independent establishment.

A list of "Executive departments" is provided by 5 U.S.C. § 101; this list includes the DOD but no components thereof. "Government corporation," defined by 5 U.S.C. § 103, does not include the DOD or any of its parts. "Independent establishments" are defined by 5 U.S.C. § 104 in such a way as to exclude any Executive departments or parts thereof. The FLRA relied upon these definitions in reaching its conclusion that the relevant "agency" for purposes of § 7114(a)(2)(B) is the DOD rather than the DLA. We cannot say it was unreasonable in doing so.

Moreover, the FLRA's interpretation of "agency" seems eminently reasonable in light of the congressional objective behind § 7114(a)(2)(B). It is apparent from the

face of the statute that Congress wanted federal employees to have the assistance of a union representative when they were placed in a position of being called upon to supply information that would expose them to the risk of disciplinary action. In the context of this objective, we would have some difficulty understanding an interpretation of the statute limiting "agency" to the subdivision comprising the collective bargaining unit and excluding "representatives" of management that are employed in the higher echelons of an "Executive department." The right to the assistance of a representative is not triggered unless the employee has a reasonable belief that "the examination may result in disciplinary action against" him or her. The DCIS does not dispute that information obtained in its investigations is made available to other subdivisions of the DOD or that the fears of Nazare and Fedoriw concerning disciplinary action were well founded. In such situations, we doubt that Congress intended that union representation be denied to the employee solely because the management representative is employed outside the bargaining unit.

We also note that § 7114(a)(2) makes express reference to the bargaining unit and appears to distinguish this concept from "the agency." When it speaks of "formal discussions" in paragraph (A) and of "examination" in paragraph (B), it refers to the union as the "exclusive representative of an appropriate unit" and to the employee as the "employee in the unit," as contrasted with its characterization of management's representative as a "representative of the agency." We think this distinction is consistent with the purpose of § 7114(a)(2) and supports the FLRA's interpretation of that section.

The DCIS makes two primary arguments for a contrary result. The first is that the exclusionary list which Congress appended to the statutory definition of "agency" includes the Central Intelligence Agency, a governmental entity that concededly is not an Executive department and that is part of the Executive Office of the President, also not an Executive department. While this argument is not wholly without per-

suasive force, we do not consider it strong enough to render the FLRA's interpretation of § 7114 unreasonable. We believe a draftsman who wanted to make certain that employees of the CIA would not be covered by § 7114(a)(2)(B) might well have chosen the language used in §§ 7114 and 7103 to achieve that objective despite the fact it left the list of exclusions not in complete harmony with the statutory definition of "agency."

The DCIS' second argument is that Congress "did not intend the formalistic definition of 'agency' " to be used in interpreting § 7114(a)(2)(B) and that this is apparent from the use of the word "agency" and the phrase "representative of the agency" in other sections of the FLMRA. This argument focuses primarily on § 7103(a)(12), which provides in pertinent part that:

> (12) "collective bargaining" means the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees in an appropriate unit in the agency to meet at reasonable times and to consult and bargain....

The DCIS asserts that the statutory definition of "agency" was obviously not intended to apply to § 7103(a)(12) and that the bargaining anticipated by that section is bargaining between a union and a management representative employed in the bargaining unit. The DCIS then suggests that we should reach the same conclusion with respect to § 7114(a)(2)(B). We are unpersuaded.

First, we do not find the statutory definition as ill fitting in § 7103(a)(12) as does the DCIS. The FLMRA was modeled in part on the federal statutes regulating labor-management relations in the private sector. It does not strike us as farfetched that the FLMRA was drafted with the thought that an Executive agency, like many large corporations, might choose an organizational structure including a personnel relations department whose specialized employees are charged with the responsibility of negotiating collective bargaining agreements on behalf of all subdivisions of the agency. The statutory definition of

"agency," when incorporated in the definition of "collective bargaining," would provide sufficient flexibility to accommodate such an approach.

Moreover, the fact that the term "agency" may be used in a different manner in one or more sections of the FLMRA does not effectively erase from the Act the specific definition of "agency" given by Congress in § 7103. Rather, in order to effectuate the intent of Congress, the FLMRA should be interpreted so that where the statutory definition is appropriate, it will be applied, and where inappropriate—as arguably in § 7103(a)(12)—it will not apply. Such interpretation is exactly the sort of task that the FLRA is meant to perform with respect to the FLMRA and has here accomplished.[1]

## IV.

■ Next, the DCIS argues that, even if the DOD is the "agency" for purposes of § 7114(a)(2)(B), the DCIS is so independent of the DOD that Agent Johnson did not conduct the interviews as the "representative" of the DOD. We disagree because we believe the term "representative" should be construed with reference to the objective of the statute. In the context of implementing that objective, the degree of supervision exercised by DOD management over the affairs of the DOD–OIG is simply irrelevant. DCIS investigators are employees of the DOD and their purpose when conducting interviews like the ones here involved is to solicit information concerning possible misconduct of DOD employees in connection with their work. Concededly, the information secured may be disseminated to supervisors in affected subdivisions of the DOD to be utilized by those supervisors for DOD purposes. Under these circumstances, we are confident that Congress would regard a DCIS investigator as a "representative" of the DOD.

## V.

■ Finally, we turn to the DCIS's argument that, whatever "representative of the agency" may mean where other agencies are concerned, the mission of the DCIS is such that Congress could not have intended employees to have the right to be represented during interviews conducted by it. While we acknowledge that a substantial policy argument can be made that DCIS investigations should be excepted from the *Weingarten* rule, we do not find § 7114(a)(2)(B) and the mandate of the DCIS so clearly irreconcilable that we are willing to imply an exception based solely on the enactment of the IG Act. Section 7114(a)(2)(B) was adopted by Congress in 1978 shortly after the decision in *Weingarten* and purports on its face to confer *Weingarten* rights on all federal employees in a bargaining unit. The DCIS, in effect, asks us to find a partial, implied repeal of § 7114(a)(2)(B) based solely on Congress' decision in 1978 to authorize the creation of inspector general offices in a number of federal agencies. This we decline to do.

It will suffice for present purposes to quote Justice Brennan's description of the role a *Weingarten* representative is intended to play in an investigative interview:

> The employer has no duty to bargain with the union representative at an investigatory interview. "The representative is present to assist the employee, and may attempt to clarify the facts or suggest other employees who may have knowledge of them. The employer, however, is free to insist that he is only interested, at that time, in hearing the employee's own account of the matter under investigation."
>
> *       *       *       *       *       *
>
> A single employee confronted by an employer investigating whether certain conduct deserves discipline may be too fearful or inarticulate to relate accurately the

---

**1.** The DCIS also looks for support to *National Treasury Employees' Union v. FLRA,* 835 F.2d 1446, 1250 n. 5 (D.C.Cir.1987), which it argues interpreted "a representative of the agency" as meaning "a representative of the agency that employs the worker." Because Nazare and Fe- doriw are ultimately employees of the DOD, this interpretation clearly would not preclude the FLRA's finding that the DCIS and its agents, which are also within the DOD, are representatives of the agency.

incident being investigated, or too ignorant to raise extenuating factors. A knowledgeable union representative could assist the employer by eliciting favorable facts, and save the employer production time by getting to the bottom of the incident occasioning the interview. Certainly his presence need not transform the interview into an adversary contest.

420 U.S. at 260, 262–63, 95 S.Ct. at 966.

Given the limited function of a *Weingarten* representative, it is conceivable to us that Congress might conclude that the employee's interest in representation outweighs the limited interference that his or her representative's presence might occasion in DCIS interviews. We acknowledge that this is not a necessary conclusion and that Congress might well reach a contrary one. This is a legislative decision, however, and nothing in the IG Act or its legislative history persuades us that it is a legislative decision that Congress considered and resolved against federal employees when it passed that Act.

### VI.

For the foregoing reasons, we will deny the petition for review and grant enforcement of the FLRA's order.