833 F.2d 1129
 126 L.R.R.M. (BNA) 3235
 UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Social Security Administration, Petitioners,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
and
American Federation of Government Employees, AFL-CIO,
Intervenor (Two Cases).
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
Social Security Administration, Social Security
Administration Field Operations, New
York Region, Petitioners,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent,
and
American Federation of Government Employees, AFL-CIO, Intervenor.
 Nos. 87-3513(L), 87-3514 and 87-3515.
 United States Court of Appeals,
Fourth Circuit.
 Argued July 7, 1987.
Decided Nov. 25, 1987.
 
 Al J. Daniel, Jr., Dept. of Justice (Richard K. Willard, Asst. Atty. Gen.; Leonard Schaitman, Dept. of Justice on brief), for petitioners.
 William E. Persina, Deputy Solicitor, Federal Labor Relations Authority (Ruth E. Peters, Solicitor; Pamela P. Johnson on brief), for respondent.
 
 
 1
 Joseph F. Henderson, Staff Counsel, American Federation of Government Employees, AFL-CIO (Mark D. Roth, General Counsel on brief), for intervenor.
 
 
 2
 Before CHAPMAN and WILKINS, Circuit Judges, and HENDERSON, District Judge for the District of South Carolina, sitting by designation.
 
 HENDERSON, District Judge:
 
 3
 The Department of Health and Human Services, Social Security Administration ("SSA"), petitions for review of three decisions, consolidated on appeal, of the Federal Labor Relations Authority (the "Authority").[1] The Authority cross-petitions for enforcement of these decisions. 5 U.S.C. Sec. 7123(a), (b). In each case, the Authority ruled that it was an unfair labor practice under the Federal Labor Management Relations Act (the "Statute"), Title VII of the Civil Service Reform Act of 1978, 5 U.S.C. Sec. 7101 et seq. (1982), for SSA to refuse to provide intervenor American Federation of Government Employees, AFL-CIO ("AFGE" or the "Union"), or its locals, with a list of the names and home addresses of SSA employees within specific bargaining units.
 
 
 4
 On appeal, SSA challenges three conclusions of the Authority made in each of the underlying cases: (1) the requested information is sufficiently relevant to the collective bargaining process to be subject to disclosure under 5 U.S.C. Sec. 7114(b)(4)(B); (2) the requested information may be presumed "necessary" within the meaning of 5 U.S.C. Sec. 7114(b)(4)(B); and (3) disclosure is not prohibited by the Privacy Act, 5 U.S.C. Sec. 552a (1982 & Supp. III 1985). Because we find no error in the Authority's rulings, we enforce the orders.
 
 
 5
 * In each of the underlying cases, the Union as the authorized exclusive representative of all SSA employees requested the names and home addresses of all employees in a specified bargaining unit. The Union made its requests pursuant to 5 U.S.C. Sec. 7114(b)(4), which imposes on SSA a duty to negotiate in good faith by providing data to the Union "to the extent not prohibited by law." Although the precise purpose for each of the requests varies, in essence the Union wished to advise bargaining unit employees of its activities by mail and to solicit employees' opinions with respect to negotiations between the Union and SSA.[2]
 
 
 6
 SSA denied the requests as either being prohibited by the Privacy Act or not relevant or necessary to the outcome of negotiations within the meaning of the Statute. 5 U.S.C. Sec. 7114(b)(4)(B). The Union then filed unfair labor practice charges in each case pursuant to 5 U.S.C. Sec. 7116(a)(1), (5) and (8). In each case, the Authority found that SSA's refusal to release employees' home addresses constituted an unfair labor practice and ordered SSA to provide the requested information to the Union and to post notices of intent to disclose within SSA. In so ruling, the Authority relied on its decision on remand in Farmers Home Administration Finance Office, St. Louis, Missouri, ("FHAFO" ), 23 F.L.R.A. 788 (No. 101) (Oct. 31, 1986). In FHAFO, the Authority held that a union request for names and home addresses of its bargaining unit employees is consistent with its statutory responsibility to represent those employees and that an agency must furnish such information upon request without regard to whether a means of communication other than direct mailing is available. The Authority further concluded in FHAFO that the balance of competing interests under the Freedom of Information Act ("FOIA") favors disclosure; therefore, the release of home addresses is not prohibited by the Privacy Act.
 
 II
 
 7
 The threshold issue is whether the Union's requests come within the scope of the Statute, 5 U.S.C. Sec. 7114(b)(4)(B). The Statute requires an agency to negotiate in good faith by, inter alia, providing to an authorized union on request "data which is [sic ] reasonably available and necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining...." 5 U.S.C. Sec. 7114(b)(4)(B). If, as SSA contends, the requests are insufficiently related to the collective bargaining process or the information sought is not necessary for the Union's participation in the process, SSA is not obligated to release its employees' names and home addresses to the Union and we need not reach the issue of whether such release is prohibited by the Privacy Act.
 
 A.
 
 8
 SSA contends at the outset that the purposes for which the Union sought the requested information are not properly related to collective bargaining as defined by the Statute. We do not agree. The term collective bargaining is defined as:
 
 
 9
 the performance of the mutual obligation of the representative of an agency and the exclusive representative of employees ... to meet at reasonable times and to consult and bargain in a good-faith effort to reach agreement with respect to the conditions of employment affecting such employees and to execute, if requested by either party, a written document incorporating any collective bargaining agreement reached....
 
 
 10
 5 U.S.C. Sec. 7103(a)(12).
 
 
 11
 At the time the Union made its requests, negotiations for reaching an "agreement with respect to the conditions of employment" were either pending or imminent. We do not perceive, therefore, that the Authority misconstrued the literal language of the Statute by ordering disclosure. See Davis v. Lukhard, 788 F.2d 973, 983 (4th Cir.), cert. denied sub nom. Staton v. Lukhard, --- U.S. ----, 107 S.Ct. 231, 93 L.Ed.2d 157 (1986) (a statute is interpreted according to its literal language unless such interpretation would contravene clear legislative intent).
 
 
 12
 We do not, however, ground our conclusion that the Union's requests were sufficiently relevant to the collective bargaining process solely on the fact that the requested information was sought to aid the Union during the course of negotiations.[3]
 
 
 13
 The Union's duties as the exclusive representative of agency employees do not begin and end abruptly with each round of negotiations but continue during the interim. It is well settled in the private sector that an employer's obligation to furnish information needed by a union for proper performance of its duties extends to information needed for the administering and policing of a contract as well as for contract negotiations. See NLRB v. ACME Industrial Co., 385 U.S. 432, 435-36, 87 S.Ct. 565, 568, 17 L.Ed.2d 495, 499 (1967). We see no reason to restrict a union's role in the public sector inasmuch as the Labor Management Relations Act of 1947, which governs labor matters in the private sector, and the Statute share a similar definition of collective bargaining as well as a similar purpose.[4] Such a result is also implicit in the language of the Statute: the agency is to disclose data necessary not only for "negotiations of subjects within the scope of collective bargaining," but for "full and proper discussion [and] understanding" of such subjects as well. 5 U.S.C. Sec. 7114(b)(4)(B).
 
 
 14
 Communication between the Union and bargaining unit employees appears to be as important to the performance of the Union's representational duties in the interim between negotiations as it is during negotiations. "It seems manifest beyond dispute that the Union cannot discharge its obligation unless it is able to communicate with those in whose behalf it acts." Prudential Insurance Co. of America v. NLRB, 412 F.2d 77, 84 (2nd Cir.) cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969) (holding a union request for employee names and addresses was relevant to collective bargaining in the private sector). Therefore, the Union's requests for employees' names and home addresses, which would enable communication in furtherance of the Union's duties, must be deemed relevant under 5 U.S.C. Sec. 7114(b)(4)(B).B.
 
 
 15
 The Statute further requires that data requested by the Union be, inter alia, "necessary" to discharge of the Union's responsibilities. 5 U.S.C. Sec. 7114(b)(4)(B).[5] The Authority in its decision on remand in FHAFO, 23 F.L.R.A. 788, interpreted the Statute to embrace requests for employees' names and home addresses without regard to the adequacy of alternative means of communication such as the agency's internal mail system and bulletin boards or hand-distribution of literature in the workplace. SSA contends that this interpretation overreaches the language of the Statute; rather, the Statute should be construed to require a case-by-case determination of necessity. We do not agree.
 
 
 16
 In enacting the Statute, Congress expressed its intent that certain collective bargaining procedures be established "to meet the special requirements and needs of the Government. The provisions of [the Statute] should be interpreted in a manner consistent with the requirement of an effective and efficient Government." 5 U.S.C. Sec. 7101(b). As stated above, communication between the Union and bargaining unit employees is essential to fulfillment of the Union's duties as their exclusive representative in the collective bargaining process. The Authority has concluded not only that direct mailing is the best means of communication inasmuch as the content, timing and frequency are completely within the Union's discretion, but that direct mailing constitutes the only means with which there is no possibility of agency interference. Therefore, according to the Authority, the requested names and home addresses are necessary to the collective bargaining process in that they enable direct communication to take place.
 
 
 17
 Our task in reviewing the Authority's interpretation under 5 U.S.C. Sec. 7123(c) is to determine whether it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. Sec. 706(2)(A) (1982). This Court has a duty to uphold "reasonable or defensible constructions" of the Authority's enabling act, Bureau of Alcohol, Tobacco & Firearms v. FLRA, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195, 202 (1983), "even if it is not the construction we would reach in a de novo setting." U.S. Army Engineer Center v. FLRA, 762 F.2d 409, 414 (4th Cir.1985) (citing Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984)); Defense Logistics Agency v. FLRA, 754 F.2d 1003, 1013-14 (D.C.Cir.1985).
 
 
 18
 We do not find the Authority's interpretation to be arbitrary or capricious. To the contrary, we find the desirability of direct communication and the resulting need for names and home addresses sufficiently connected to support the Authority's presumption that such information is "necessary" to the collective bargaining process under 5 U.S.C. Sec. 7114(b)(4)(B).
 
 
 19
 The presumption of necessity is of course rebuttable. The Authority has observed that disclosure need not be made in situations where, for example, evidence of a union's past actions supports a conclusion that employees would be in imminent danger if their home addresses were released to the union. FHAFO, 23 F.L.R.A. 101 (citing Shell Oil Co. v. NLRB, 457 F.2d 615 (9th Cir.1972)).
 
 
 20
 In the three cases before us, SSA hinges its position solely on the availability of alternative means of communication without presenting any additional facts that would tend to rebut the presumption of necessity. We agree with the Authority that the mere existence of other means of communication is insufficient to rebut the presumption.
 
 
 21
 We caution, however, that the presumption is one of necessity, not of disclosure. A request must still meet all other statutory requirements, e.g., the data must be normally maintained by the agency and reasonably available and disclosure must not be otherwise prohibited by law. 5 U.S.C. Sec. 7114(b)(4).
 
 
 22
 The Authority's determination that it need not review the necessity of requests for names and home addresses on a case-by-case basis comports with the language and purpose of the Statute. This interpretation is congruent with "Congress' attempt to preserve in careful balance the interests of federal employees in negotiating their working conditions, of agencies in the exercise of the regulatory powers, and of the country in the orderly and efficient administration of government." U.S. Army Engineer Center, 762 F.2d at 417.
 
 III
 
 23
 Having concluded that the information sought by the Union is properly the subject of a request under 5 U.S.C. Sec. 7114(b)(4)(B), we now address the issue of whether release of employees' names and home addresses is "prohibited by law." 5 U.S.C. Sec. 7114(b)(4). SSA has asserted that release is barred by a provision of the Privacy Act, 5 U.S.C. Sec. 552a, which forbids agencies to disclose records to parties other than the person to whom the record pertains except with that person's written consent. 5 U.S.C. Sec. 552a(b). The Authority contends the Privacy Act does not preclude the release, citing an exception in 5 U.S.C. Sec. 552a(b)(2) for disclosures mandated by the Freedom of Information Act ("FOIA"), 5 U.S.C. Sec. 552.[6]
 
 
 24
 While the FOIA generally authorizes disclosure of information contained in public records, it also expressly recognizes that the public interest is not always served by disclosure. Spannaus v. United States Department of Justice, 813 F.2d 1285, 1288 (4th Cir.1987) (quoting Baldrige v. Shapiro, 455 U.S. 345, 352, 102 S.Ct. 1103, 1108, 71 L.Ed.2d 199, 207 (1982)). Specifically, the FOIA does not apply to information contained in personnel files if release "would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. Sec. 552(b)(6). It is undisputed that the information sought is maintained by SSA in personnel files. Therefore, it is necessary to balance the employees' right to privacy against the public interest in disclosure. American Federation of Government Employees, AFL-CIO, Local 1923 v. United States Department of Health and Human Services, 712 F.2d 931, 932 (4th Cir.1983) (citing Department of the Air Force v. Rose, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976)).
 
 
 25
 The Authority ruled in each of the instant cases that the balance of interests weighs in favor of disclosure in accordance with its decision on remand in FHAFO, which presented virtually identical facts to those now before the Court. The Authority's decision on remand in FHAFO followed the Second Circuit's resolution of competing interests presented by, again, virtually identical facts in American Federation of Government Employees, Local 1760, AFL-CIO v. FLRA, 786 F.2d 554 (2nd Cir.1986). The result in FHAFO and AFGE, Local 1760, however, conflicts with this Circuit's earlier resolution of the same issue in AFGE, Local 1923, 712 F.2d 931.[7] SSA now urges this Court to overturn the Authority's decision in FHAFO to conform with the result in AFGE, Local 1923. We decline to do so.
 
 
 26
 In AFGE, Local 1923, the Union instituted an action in the United States District Court for the District of Maryland under the FOIA challenging SSA's refusal to provide information including bargaining unit employees' home addresses. The district court granted summary judgment for SSA. On appeal, this Court held that employees have "a strong privacy interest" in their home addresses. 712 F.2d at 932. "Disclosure could subject the employees to an unchecked barrage of mailings and perhaps personal solicitations, for no effective restraints could be placed on the range of uses to which the information, once revealed, might be put." Id.[8] Accordingly, this Court ruled that the district court properly dismissed the Union's action for disclosure under the FOIA.
 
 
 27
 The instant cases come before us in a different posture in that AFGE, Local 1923 was not a review of a ruling by the Federal Labor Relations Authority. Here the Union has sought disclosure under the Statute, not directly under the FOIA. The Authority has determined that SSA's refusal to disclose its employees' home addresses to the Union constitutes an unfair labor practice. 5 U.S.C. Sec. 7116(a). Considerable weight is due the Authority's interpretation of the Statute:
 
 
 28
 Like the National Labor Relations Board, ...the FLRA was intended to develop specialized expertise in its field of labor relations and to use that expertise to give content to the principles and goals set forth in the Act. See Sec. 7105; H.R.Rep. No. 95-1403, p. 41 (1978). Consequently, the Authority is entitled to considerable deference when it exercises its "special function of applying the general provisions of the Act to the complexities" of federal labor relations.
 
 
 29
 Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 97, 104 S.Ct. at 444, 78 L.Ed.2d at 202 (citations omitted).
 
 
 30
 Although this matter involves the Authority's interpretation of statutes other than its enabling act, we perceive that the interpretation bears directly on the "complexities" of federal labor relations and we accordingly defer to the Authority's rulings. Indeed, this result appears to have been contemplated by the majority opinion in AFGE, Local 1923, which states:
 
 
 31
 [The Union] may be entitled to this information under some other federal law. See, e.g., Prudential Insurance Company of America v. N.L.R.B., 412 F.2d 77 (2d Cir.) (employer must comply with union request for names and addresses of bargaining unit employees under National Labor Relations Act), cert. denied, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969). We hold only that the Freedom of Information Act is not a proper vehicle for the disclosure of that information.
 
 
 32
 712 F.2d at 933 n. 3 (emphasis added). These are not cases involving FOIA requests. We find that the Authority has, as required by 5 U.S.C. Sec. 7114(b)(4), properly applied the FOIA balancing test and we find no error in its conclusion that disclosure is warranted under the Federal Labor-Management Relations Act. That conclusion is not only consistent with the statutory language but it furthers the underlying Congressional policy of balancing competing interests to effectuate an efficient government. See Bureau of Alcohol, Tobacco & Firearms, 464 U.S. at 97, 104 S.Ct. at 444, 78 L.Ed.2d at 202.
 
 
 33
 Accordingly, the orders of the Federal Labor Relations Authority are
 
 
 34
 ENFORCED.
 
 
 
 [1]
 A fourth companion case, No. 87-3539, was transferred to the United States Court of Appeals for the District of Columbia prior to hearing
 
 
 [2]
 In case No. 87-3513(L), AFGE's Regional Vice President for Field Assessment for the Atlanta Region requested by letter the names and addresses of employees in SSA Field Assessment offices in the Atlanta Region. These employees are within the nationwide unit represented by AFGE. Although the letter specified no purpose for the request, the Vice President testified before the Administrative Law Judge that, through direct mailings, the Union wished to elicit employee input regarding imminent negotiations of a supplemental agreement and to advise employees of office closings, reorganizations, settlement agreements and Union activities in general
 In case No. 87-3514, the President of AFGE Local 3369 requested by letter the names and home addresses of all bargaining unit employees in SSA Field Operations, New York Region, where AFGE Local 3369 is recognized as the exclusive representative. The Union sought this information to elicit employees' opinions, via direct mailings, to assist it in future contract negotiations and to monitor agency compliance with the collective bargaining agreement already in effect.
 In case No. 87-3515, the AFGE National Council of SSA Field Assessment Locals requested the names and home addresses of all bargaining unit employees represented by it to assist the Union in the course of pending midterm realignment negotiations with SSA's Office of Assessment.
 
 
 [3]
 Indeed, by the time the Administrative Lae Judge issued an order in Case No. 87-3515, the negotiations underway at the time of the request had concluded. The Authority, however, ruled correctly in not allowing their conclusion to frustrate the release of information. "[A]n employer may not withhold information until it is stale and then argue that it is no longer relevant." Western Massachusetts Electric Co. v. NLRB, 589 F.2d 42, 46 n. 6 (1st Cir.1978)
 
 
 [4]
 The Labor Management Relations Act of 1947, 29 U.S.C. Sec. 141 et seq. (1982), includes a collective bargaining definition very similar to that found in the Statute:
 For the purposes of this section, to bargain collectively is the performance of the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or the negotiation of an agreement, or any question arising thereunder, and the execution of a written contract incorporating any agreement reached if requested by either party....
 29 U.S.C. Sec. 158(d). The purpose of both statutes is the orderly resolution of disputes between employees and their employers concerning conditions of employment. 5 U.S.C. Sec. 7101(a); 29 U.S.C. Sec. 141(b).
 
 
 [5]
 SSA does not dispute the Authority's finding that the requested information is "reasonably available" under 5 U.S.C. Sec. 7114(b)(4)(B)
 
 
 [6]
 A further exception to the Privacy Act's general prohibition against disclosure is found in 5 U.S.C. Sec. 552a(b)(3), which permits release of information for a "routine use" as defined in 5 U.S.C. Sec. 552a(a)(7). In FHAFO, the Authority ruled in the alternative that release of employees' home addresses is authorized under both the routine use exception and the FOIA exception to the Privacy Act. While SSA now challenges the Authority's decision as to both exceptions, we do not decide the routine use issue in view of our determination that the FOIA exception applies in these cases
 
 
 [7]
 In American Federation of Government Employees, Local 1760, AFL-CIO v. FLRA, 786 F.2d 554 (2nd Cir.1986), the Union petitioned, as here, for review of the Authority's ruling on an unfair labor practices charge. The Authority had determined that SSA's refusal to disclose its employees' home addresses did not constitute an unfair labor practice because the disclosure was prohibited under the FOIA and therefore outside the scope of 5 U.S.C. Sec. 7114(b)(4). The Authority drew support for its balance of interests under the FOIA from American Federation of Government Employees, AFL-CIO, Local 1923 v. United States Department of Health and Human Services, 712 F.2d 931 (4th Cir.1983). The Second Circuit, however, found that "the privacy interest of the average employee in his address is not particularly compelling." 786 F.2d at 556. The Second Circuit analyzed the balance of interests and concluded:
 [I]n light of the modest privacy interest in revealing addresses alone, the ALJ's finding that other means of communication are inadequate, and the statutory approval of the Union as collective bargaining agent, we hold that the release of the employees' addresses is not "prohibited by law" within the meaning of the Statute, 5 U.S.C. Sec. 7114(b)(4).
 Id. at 557. The Second Circuit remanded the case to the Authority. The Authority issued its ruling in FHAFO after that remand.
 
 
 [8]
 The issue is a close one, however, as illustrated by the dissent:
 With rare exception, there is little privacy in one's name and home address. Such information is a matter of public record in motor vehicle registration and licensing records, voting lists, and real property records. Other sources from which it may often be obtained are telephone directories and city directories. In short, it is the rare individual who has any real privacy interest in the identity of his residence.
 Id. 712 F.2d at 934 (Winter, C.J., dissenting).