**FEDERAL LABOR RELATIONS AUTHORITY, Petitioner–Cross–Respondent,**

v.

**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, Washington, D.C.; United States Department of Veterans Affairs Medical Center, Newington, Connecticut, Respondents–Cross–Petitioners.**

Nos. 272, 98, Docket 91–4049, 91–4067.

United States Court of Appeals, Second Circuit.

Argued Oct. 2, 1991.

Decided March 5, 1992.

Sandra Wien Simon, Atty., Appellate Staff, Civil Div., Dept. of Justice, Washington, D.C. (Stuart M. Gerson, Asst. Atty. Gen., Leonard M. Schaitman, Atty., Dept. of Justice, Washington, D.C., of counsel), for respondent-cross-petitioner.

Pamela P. Johnson, Atty., Federal Labor Relations Authority, Washington, D.C. (William E. Persina, Sol., William R. Tobey, Deputy Sol., Federal Labor Relations Authority, Washington, D.C., of counsel), for petitioner-cross-respondent.

Elaine Kaplan, Deputy Director of Litigation, National Treasury Employees Union, Washington, D.C. (Gregory O'Duden, Director of Litigation, National Treasury Employees Union, Washington, D.C., of counsel), for The Nat. Treasury Employees Union as amicus curiae.

Before CARDAMONE, WALKER and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

The instant litigation deals with individual privacy rights. It used to be thought that citizens had a right to pass through this world without their successes and failures or comings and goings being the subject of comment, discussion or publication. But the advent of the data computer bank has nearly swept away that long-held notion, has virtually stripped from the individual's grasp control of information concerning his or her person, and has placed the precious and increasingly scarce "right to be let alone" in an endangered state. The specific issue on this appeal is whether individuals' right of privacy in their names and home addresses contained in government files outweighs the public interest in the disclosure of this information.

The Federal Labor Relations Authority (FLRA) seeks enforcement of its April 10, 1991 order finding that cross-petitioner United States Department of Veterans Affairs (Department) committed an unfair labor practice in refusing to release to its employees' exclusive representative, the National Association of Government Employees (union), the names and home addresses of bargaining unit employees. The Department cross-appeals for review challenging the validity of the order.

The cross-petition for review is granted; the petition for enforcement is denied.

## BACKGROUND

The Federal Service Labor–Management Relations Act, 5 U.S.C. §§ 7101–7135 (1988) (Act), requires a federal agency upon request to furnish to its employees' exclusive bargaining representative information "normally maintained by the agency in the regular course of [its] business; which is reasonably available and necessary for full

and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining," to the extent that disclosure of such information is "not prohibited by law." § 7114(b)(4)(A), (B). Relying on this provision of the Act, the FLRA issued the order, which is the subject of this appeal, directing the Department to release to the union the names and home addresses of bargaining unit employees working in the Department. *United States Dept. of Veterans Affairs, Washington, D.C. and U.S. Dept. of Veterans Affairs Medical Ctr. Newington, Conn. and National Ass'n of Gov't Employees, Local R1-109*, 40 F.L.R.A. (No. 13) 101 (1991). To properly understand the FLRA's petition for enforcement of this order, it is necessary to place the Act and judicial interpretations of it in context.

### A. *The Statutory Framework*

█ Concededly the Act affording disclosure "to the extent not prohibited by law" implicates the prohibitions contained in the Privacy Act of 1974, 5 U.S.C. § 552a, which generally bars disclosure of personal information, absent consent of the individual affected. *See e.g., American Fed. of Gov. Employees, Local 1760 v. FLRA*, 786 F.2d 554, 556 (2d Cir.1986) (*Local 1760*); *see also United States Dept. of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749, 766, 109 S.Ct. 1468, 1477–78, 103 L.Ed.2d 774 (1989) (*Reporters Committee*) (Privacy Act passed out of concern over impact of computer data banks on individual privacy). The Privacy Act excepts from its prohibition against disclosure information that must be made available under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, 5 U.S.C. § 552a(b)(2), and also excepts from its bar against disclosure the use of information in a record that is compatible with the reason why it was collected, called a "routine use." § 552a(b)(3). Consequently, whether a federal agency must disclose the names and home addresses of its employees to the employees' union requires a determination of whether such information would have to be disclosed under FOIA, *see Local 1760*, 786 F.2d at 556; *FLRA v.*

*United States Dept. of Treasury, Fin. Mgt. Serv.*, 884 F.2d 1446, 1450 (D.C.Cir. 1989), *cert. denied*, 493 U.S. 1055, 110 S.Ct. 863, 107 L.Ed.2d 948 (1990) (*Treasury*), or as a routine use.

FOIA is a broadly conceived statute whose overriding aim is disclosure. *See Department of Air Force v. Rose*, 425 U.S. 352, 361–62, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Nonetheless, exceptions to the rule requiring access to government records represent Congress' assessment of "the types of information that the Executive Branch must have the option to keep confidential." *Environmental Protection Agency v. Mink*, 410 U.S. 73, 80, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Most relevant for purposes of this appeal is the FOIA exemption of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." § 552(b)(6) (Exemption 6). To determine whether Exemption 6 applies requires balancing an individual's right of privacy against the public purpose to be served by disclosure. *See Rose*, 425 U.S. at 372, 96 S.Ct. at 1604. Federal courts and the FLRA have differed on how this balance, in the context presented here, historically has been struck.

### B. *Case Law*

The Federal Service Labor–Management Relations Act as its name implies governs employer-employee relations in the public sector. The FLRA's role in enforcing and implementing this Act is analogous to the role the National Labor Relations Board plays in the private sector. *See Bureau of Alcohol, Tobacco and Firearms v. FLRA*, 464 U.S. 89, 92–93, 104 S.Ct. 439, 441–42, 78 L.Ed.2d 195 (1983). Specifically, the FLRA is charged with "develop[ing] specialized expertise ... to give content to the principles and goals set forth in the Act." *Id.* at 97, 104 S.Ct. at 444. In carrying out its mandate, the FLRA has had to decide whether § 7114(b)(4) of the Act required a federal agency to release its employees' names and home addresses to the employees' union.

From 1985 to the present the FLRA's position has shifted back and forth with the case law. Following *American Fed. of Gov. Employees, Local 1923 v. United States Dept. of Health and Human Services,* 712 F.2d 931 (4th Cir.1983) (*AFGE Local 1923*) (upholding denial of union's FOIA request for information), it ruled that release of such information would result in a "clearly unwarranted invasion of personal privacy." *See Farmers Home Admin. Fin. Office, St. Louis, Mo.,* 19 F.L.R.A. (No. 21) 195 (1985) (*Farmers Home*). But when it sought enforcement in *Farmers Home,* we disagreed with the Fourth Circuit, holding instead that release of federal employees' home addresses was in the public interest and that release of such information was not barred by FOIA. *See Local 1760,* 786 F.2d at 557. Subsequently, the FLRA adopted our view in *Farmers Home Admin. Fin. Office, St. Louis, Mo.,* 23 F.L.R.A. (No. 101) 788 (1986) (*Farmers Home II*), *enforced in part and remanded sub nom. United States Dept. of Agric. v. FLRA,* 836 F.2d 1139 (8th Cir.1988), *vacated on other grounds and remanded,* 488 U.S. 1025, 109 S.Ct. 831, 102 L.Ed.2d 964 (1989). Other circuits followed in directing release of this information, *see United States Dept. of the Navy and Philadelphia Naval Shipyard v. FLRA,* 840 F.2d 1131 (3rd Cir.), *petition for cert. dismissed,* 488 U.S. 881, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988); *United States Dept. of the Air Force, Scott Air Force Base, Ill. v. FLRA,* 838 F.2d 229 (7th Cir.), *petition for cert. dismissed,* 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988), including the Fourth Circuit in *United States Dept. of Health and Human Servs. v. FLRA,* 833 F.2d 1129, 1135 (1987), *petition for cert. dismissed,* 488 U.S. 880, 109 S.Ct. 632, 102 L.Ed.2d 170 (1988) (*HHS*) (distinguishing its own decision in *AFGE Local 1923* as involving neither review of an FLRA ruling nor a disclosure request pursuant to the Act, but rather a request directly under FOIA). In granting disclosure most of these cases ruled that the public interest in collective bargaining outweighed the "modest" individual privacy interest at stake.

But this entire corpus of decisional law was put into question by the Supreme Court in *Reporters Committee.* There the press requested the "rap sheet" of an individual alleged to have engaged in illegal financial dealings with a Congressman and the Department of Defense. The Department of Justice denied the request, relying on FOIA's exemption for "records ... compiled for law enforcement purposes," the disclosure of which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." § 552(b)(7)(C) (Exemption 7(C)). The Supreme Court agreed with the Department of Justice holding that—notwithstanding that some of the information was already public— "[t]he privacy interest in a rap sheet is substantial." 489 U.S. at 771, 109 S.Ct. at 1480.

Turning to the public interest side of the balance, it stated that

> [A]lthough there is undoubtedly some public interest in anyone's criminal history, ... the FOIA's central purpose is to ensure that the *Government's* activities be opened to the sharp eye of public scrutiny, not that information about *private citizens* that happens to be in the warehouse of the Government be so disclosed.

*Id.* at 774, 109 S.Ct. at 1482 (emphasis in original). Because disclosure of the requested rap sheet would shed no light on activities of a federal agency, *id.* at 775, 109 S.Ct. at 1483, it continued, there was no relevant public interest to be weighed against the invasion of privacy likely to result from such disclosure. *Id.* at 780, 109 S.Ct. at 1485.

Following *Reporters Committee,* the District of Columbia Circuit concluded that the public interest in collective bargaining that previously had been weighed in favor of disclosure could no longer be considered in balancing the competing interests implicated in an Exemption 6 inquiry. *See Treasury,* 884 F.2d at 1451–52.

Although forced to reconsider its position, the FLRA, in *United States Dept. of the Navy, Portsmouth Naval Shipyard, Portsmouth, N.H. and International*

*Fed'n of Professional and Technical Engineers, Local 4,* 37 F.L.R.A. (No. 39) 515 (1990) (*Portsmouth*), rejected the reasoning of the cases prohibiting release of employees' names and home addresses, stated that the Authority was required to "harmonize" the Federal Service Labor–Management Relations Act, the Privacy Act and FOIA to the fullest extent possible, and concluded that disclosure of the subject information was not prohibited by law. *Id.* at 523–24. It distinguished *Reporters Committee,* noting that the appropriate public interest to be applied was the facilitation of collective bargaining in the federal sector, *id.* at 524–25, and that this public interest outweighs the relatively minor privacy interest of employees in the release of their names and home addresses to their union. *Id.* at 525.

In support of its position, the FLRA alternatively declares that the requested information is available to the union under § 552a(b)(3). This section of the Privacy Act excepts from its general bar against disclosure those records requested for a "routine use," *i.e.,* "the use of such record for a purpose which is compatible with the purpose for which it was collected." 5 U.S.C. § 552a(a)(7). Because pre-*Reporters Committee* courts facing the release of information question had upheld the FLRA's position on FOIA grounds, the "routine use" argument had not been addressed. *See, e.g., Local 1760,* 786 F.2d at 556 n. 2; *but see Treasury,* 884 F.2d at 1456 (a post-*Reporters Committee* decision refusing to require disclosure as a "routine use" without a showing that alternate means of communication were insufficient). Nonetheless, the FLRA persisted in *Portsmouth* stating that even were disclosure not permitted under FOIA, it still was authorized as a "routine use." *See* 37 F.L.R.A. at 525. In ruling as it did in the matter presently before us for enforcement, the FLRA decided to stand or fall with its *Portsmouth* precedent.

## DISCUSSION

### A. *Applicability of the Act*

■ As a preliminary matter we must determine whether the information here sought is "necessary for full and proper discussion, understanding, and negotiation of subjects within the scope of collective bargaining." Because nothing in *Reporters Committee* affects the general rule that "the construction of a statute by those charged with its administration is entitled to substantial deference," *United States v. Rutherford,* 442 U.S. 544, 553, 99 S.Ct. 2470, 2476, 61 L.Ed.2d 68 (1979), the FLRA's determination that the names and home addresses of bargaining unit employees are necessary in order for the union to "be able to identify and communicate with [its] bargaining unit members" and thereby fulfill its statutory role as bargaining agent, *see Farmers Home II,* 23 F.L.R.A. at 796–797, must be upheld if it is a permissible construction of the Act. *See, e.g., Fort Stewart Schools v. FLRA,* 495 U.S. 641, 645, 110 S.Ct. 2043, 2046, 109 L.Ed.2d 659 (1990).

■ In assessing the necessity of access to the names and home addresses of employees in its bargaining unit, the union's role in federal labor relations must be understood. An exclusive bargaining representative represents not only its union members, but all employees in the unit, "without discrimination and *without regard to labor organization membership.*" 5 U.S.C. § 7114(a)(1) (1988) (emphasis added). To "meet and negotiate in good faith for the purposes of arriving at a collective bargaining agreement," *id.* § 7114(a)(4) a union therefore must communicate with union and non-union employees alike. In light of this, we concluded in *Local 1760* that alternatives to direct communication afforded by mailings to all unit members—such as workplace visits or the use of bulletin boards—are not such effective alternatives as to make the FLRA's insistence on the subject mailings an arbitrary or capricious position. 786 F.2d at 557; *see also HHS,* 833 F.2d at 1133 (mailing is only means of communication, according to the Authority, where no possibility of employer interference exists). Hence, we think it reasonable to conclude that a list of employees' names and home addresses is

"necessary" for the union to fulfill its statutory obligations within the meaning of 5 U.S.C. § 7114(b)(4)(B).

### B. *Disclosure Under The FOIA*

■ With this in mind, we turn now to analyze whether the FOIA's Exemption 6 nonetheless precludes disclosure of this information. In interpreting FOIA, it must be remembered that the statute "seeks to permit access to official information long shielded unnecessarily from public view," *Mink*, 410 U.S. at 80, 93 S.Ct. at 832, and was intended to establish " 'a general philosophy of full agency disclosure.' " *Rose*, 425 U.S. at 360–61, 96 S.Ct. at 1599 (quoting S.Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). Realizing that this goal was potentially in conflict with individual privacy interests, *see, e.g., Reporters Committee*, 489 U.S. at 766 & n. 18, 109 S.Ct. at 1477–78 & n. 18, Congress exempted from FOIA's disclosure requirements "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." In Exemption 6

> Congress sought to construct an exemption that would require a balancing of the individual's right of privacy against the preservation of the basic purpose of the [FOIA] 'to open agency action to the light of public scrutiny.' The device adopted to achieve that balance was the limited exemption, where privacy was threatened, for 'clearly unwarranted' invasions of personal privacy.

*Rose*, 425 U.S. at 372, 96 S.Ct. at 1604; *see also Reporters Committee*, 489 U.S. at 762, 109 S.Ct. at 1476 (Exemption 7(C) requires court to balance privacy interests against the public interest in disclosure).

■ The exemptions that are part and parcel of the FOIA's broad disclosure plan are not to be used to deflect its aim that is focused on openness, not secrecy. The exemptions are exclusive, *Mink*, 410 U.S. at 79, 93 S.Ct. at 832, not to be added to or detracted from, *see U.S. Dept. of Justice v. Tax Analysts*, 492 U.S. 136, 153, 109 S.Ct. 2841, 2852, 106 L.Ed.2d 112 (1989) (*Tax Analysts*), to be narrowly construed with

doubts resolved in favor of disclosure. *See Rose*, 425 U.S. at 366, 96 S.Ct. at 1601. In stressing the broad policy objective of disclosure the Supreme Court has noted that "unless the requested material falls within one of these nine statutory exemptions, FOIA requires that records and material in the possession of federal agencies be made available on demand to any member of the general public." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 221, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978); *accord NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 136, 95 S.Ct. 1504, 1509, 44 L.Ed.2d 29 (1975).

We do not regard such statements as in conflict with the Supreme Court's teaching in *Rose* and *Reporters Committee* that whether disclosure of a document is permitted under the FOIA, despite intrusions on privacy interests, is to be assessed solely in terms of "the nature of the requested document and its relationship to 'the basic purpose of the FOIA 'to open agency action to the light of public scrutiny.' ' " *Reporters Committee*, 489 U.S. at 772, 109 S.Ct. at 1481 (quoting *Rose*, 425 U.S. at 372, 96 S.Ct. at 1604). In *Tax Analysts*, decided after *Reporters Committee*, the question was whether the FOIA required the Justice Department to make available, to the publisher of a tax information newsletter, copies of district court decisions that the Department had received in the course of litigating tax cases on behalf of the federal government. 109 S.Ct. at 2844. The precise issue was whether the copies of these decisions constituted "agency records;" if not, FOIA did not apply.

■ To qualify as agency records, the requested information must either be created or obtained by the agency and within its control at the time the FOIA request is made. *Id.* at 2847–48. In ruling that the requested information was available under FOIA the Supreme Court rejected the Department's contention that agency records should be limited to documents "prepared substantially to be relied upon in agency decisionmaking." *Id.* at 2849. It stressed that FOIA's "goal [is to give] the public access to all non-exempted information re-

ceived by an agency as it carries out its mandate."

This suggests that the preliminary inquiry—whether the information sought constitutes agency records subject to FOIA's disclosure requirements—is not affected by the purpose, or public interest, for which the information is requested. *See, e.g., National Assn. of Retired Fed. Employees v. Horner*, 879 F.2d 873, 874 (D.C.Cir.1989), *cert. denied*, 494 U.S. 1078, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990) (*Horner*). Only where a privacy interest is implicated does the public interest for which the information will serve become relevant and require a balancing of the competing interests. *See id.* (FOIA in the first instance requires no showing of public interest).

Thus, we next address the level of the privacy interest that must be implicated before the requester is required to demonstrate that a public purpose will be served by disclosure. *Compare Horner*, 879 F.2d at 874 (privacy interest at stake must be significant or substantial) *with Treasury*, 884 F.2d at 1459 (Ginsburg, J., concurring) (privacy interest need only be modest). In answering this question, the distinctions between FOIA's "privacy exemptions" should be noted. As previously stated, Exemption 6 applies where disclosure "would result in a clearly unwarranted invasion of personal privacy." Exemption 7(C), on the other hand, precludes the disclosure of information gathered for law enforcement purposes where to do so "could reasonably be expected to constitute an unwarranted invasion of personal privacy." These differences are far from accidental. *See Rose*, 425 U.S. at 378–79 n. 16, 96 S.Ct. at 1607 n. 16. Rather, they result from an explicit compromise between the executive and legislative branches making Exemption 7(C) broader and more easily satisfied so that disclosure under it is more difficult to obtain. *See id.; Reporters Committee*, 489 U.S. at 756, 109 S.Ct. at 1472–73; *see also Hopkins v. United States Dept. of Housing and Urban Dev.*, 929 F.2d 81, 86 (2d Cir.1991) (*Hopkins*).

That Exemptions 6 and 7(C) provide differing levels of protection once a privacy interest is implicated is irrelevant to determining the sort of privacy interest that must first be shown before protection is afforded at all. For, were a greater degree of privacy *interest* to be required before protection is afforded against an *invasion* of that interest, it would, in effect "double count" the differences. In other words, in FOIA's exemption scheme regarding invasion of threatened privacy interests Congress has accommodated variations in the quality of those interests by providing differing degrees of protection: the more significant the type of privacy interest (as in the case of information related to law enforcement proceedings) the lighter the burden is to preclude disclosure (disclosure only need be *reasonably expected* to result in an unwarranted invasion); the less significant the type of privacy interest (as in the case of information in personnel, medical, or similar files), the heavier the burden is to preclude disclosure (disclosure must result in a predictable, more than possible, and *clearly* unwarranted invasion). *See Rose*, 425 U.S. at 380–81 & n. 19, 96 S.Ct. at 1608 & n. 19. If, in the case of Exemption 6, a greater privacy interest is required in order to trigger balancing at all, i.e., a significant privacy interest must first be threatened before a court is required to inquire whether its invasion would be clearly warranted, the differences between the privacy interests protected by Exemption 6 and 7(C) would be considered not only in measuring the degree of invasion (as per FOIA's scheme), but also in assessing the threshold interest required to trigger the requester's having to show a public purpose. For that reason courts should take care not to double count the required showing of privacy, for to do so usurps the congressional role. *Cf. Tax Analysts*, 492 U.S. at 153, 109 S.Ct. at 2852 (Congress' comprehensive scheme already balances and protects all interests implicated by disclosure).

It necessarily follows that the greater protection against disclosure under Exemption 7(C), in comparison to Exemption 6, is not affected by varying the weights of

either the requisite private interest or the purported public interest. As we shall see in a moment, only one public interest is relevant to FOIA disclosure balancing and this interest is constant. *See Reporter's Committee*, 489 U.S. at 772, 109 S.Ct. at 1481. In addition, FOIA requires only a measurable interest in privacy to trigger the application of the disclosure balancing tests. Rather the greater protection of privacy extended under Exemption 7(C) goes to the degree of invasion to this privacy interest that will be tolerated before disclosure is prohibited.

■ Hence, once a more than *de minimis* privacy interest is implicated the competing interests at stake must be balanced in order to decide whether disclosure is permitted under FOIA. An invasion of more than a *de minimis* privacy interest protected by Exemption 6 must be shown to be "clearly unwarranted" in order to prevail over the public interest in disclosure. *See, e.g., United States Dep't of State v. Ray,* — U.S. ——, 112 S.Ct. 541, 549, 116 L.Ed.2d 526 (1991). We now turn to consider whether the employees have a more than *de minimis* privacy interest in the disclosure of their names and home addresses to their exclusive bargaining representative.

### 1. Privacy Interest

In *Reporters Committee*, the Supreme Court instructed that the notion of privacy "encompasses the individual's control of information concerning his or her person," 489 U.S. at 763, 109 S.Ct. at 1476, and pointed out that even though " 'an event is not wholly 'private' does not mean that an individual has no interest in limiting disclosure or dissemination of the information.' " *Id.* at 770, 109 S.Ct. at 1480 (quoting Rehnquist, Is an Expanded Right of Privacy Consistent with Fair and Effective Law Enforcement?, Nelson Timothy Stevens Lectures, University of Kansas Law School, pt. 1, 13 (Sept. 26–27, 1974)). Rather, regardless of the nature of the information contained in them, "disclosure of records containing personal details about private citizens can infringe significant pri-

vacy interests." *Id.* at 766, 109 S.Ct. at 1478. And though *Reporters Committee* involved Exemption 7(C) its discussion governs Exemption 6, for the noted differences bear only on the type of information sought and the degree of invasion to a privacy interest that will be tolerated.

■ *Reporters Committee* thus makes clear that an individual has a general privacy interest in preventing dissemination of his or her name and home address. Establishing this general privacy interest does not end the inquiry. For the concept of privacy is not an abstract concept, but rather a valuable—and, in the present context, elastic—right whose boundaries are delineated by the type of information sought and by the persons requesting it. *See* 489 U.S. at 763–65, 109 S.Ct. at 1476–77. Therefore, though an individual may have a measurable privacy interest in preventing disclosure of his or her name and home address to the public at large it does not necessarily follow that the same degree of privacy is affected when the information is sought by the individual's union.

Yet, the Supreme Court teaches that the purposes for which the request was made and the identity of the requesting party—contrary to what the FLRA and the union urge—have no bearing on the merits of FOIA request. A member of the public has as much right to disclosure as a person or group with a special interest. *Reporters Committee*, 489 U.S. at 771, 109 S.Ct. at 1480. Release of information turns therefore on the nature of the document and its relationship to FOIA's purpose of exposing agency action to public scrutiny. *Id.* at 772, 109 S.Ct. at 1480. To weigh any purposes other than that central purpose upsets the calculus Congress worked out in FOIA to safeguard the competing public interest versus privacy rights concerns. That calculus resulted in a self-contained disclosure statute which represents Congress' view not only as to *how* competing goals were to be accommodated, but also as to *which* competing goals were to be accommodated.

Goals other than opening agency action to public scrutiny are deemed unfit to be

accommodated under FOIA when they clash with privacy rights. That being the case, one making a FOIA request may not introduce a "non-FOIA" consideration into the FOIA analysis and successfully suggest it precludes the existence of a privacy interest thereby obviating the need to engage in balancing—in which balance that non-FOIA consideration would be irrelevant. A union's relationship to the employees is such a non-FOIA purpose, and even were it a relevant purpose, granting disclosure here would threaten a privacy interest because it would be impossible to assure that the uses to which the employee list would be put by the union would be limited to those contemplated by the parties' relationship.

The FLRA and the union raise another objection to finding a measurable privacy interest that can be quickly disposed of by *Reporters Committee.* That case precludes their argument that the public nature—that the information may have been made public previously—of this type of information means that there is no privacy interest in preventing disclosure. 489 U.S. at 767, 109 S.Ct. at 1478; *see also Rose,* 425 U.S. at 377, 96 S.Ct. at 1606 (stressing privacy interest of cadets in honor code and ethics violations reports though such information previously released in limited manner). Again, that one's name and address may itself be public is not dispositive. Because such information is itself generally not of much use, the public availability of the information sought must be measured in terms of the "defining characteristic" associated with the list—here, federal employment. *See Horner,* 879 F.2d at 876; *see also Halloran v. Veterans Admin.,* 874 F.2d 315, 321 (5th Cir.1989) (whether privacy is implicated concerns not only the identifying information *per se,* but also the connection between such information and some other detail). This view of privacy may be inferred as well from pre-*Reporters Committee* cases holding that lists of names and addresses—when coupled with other information—intruded upon individual privacy. *See, e.g., Minnis v. U.S. Dept. of Agric.,* 737 F.2d 784 (9th Cir.1984), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2112, 85

L.Ed.2d 477 (1985); *Heights Community Congress v. Veterans Admin.,* 732 F.2d 526 (6th Cir.), *cert. denied,* 469 U.S. 1034, 105 S.Ct. 506, 83 L.Ed.2d 398 (1984); *Wine Hobby USA, Inc. v. U.S. Internal Revenue Service,* 502 F.2d 133 (3rd Cir.1974).

In sum, it cannot be said that one's name and address, coupled with that individual's status as a federal employee—the appropriate inquiry—is generally publicly available. In light of Congress' recognition in FOIA and the Privacy Act of the threat to privacy that is occasioned by compilations of this type of data, we are compelled to conclude that a more than *de minimis* privacy interest is threatened by disclosure.

### 2. The Public Interest

We next address the primary issue presented on this appeal, that is, whether there is any public interest to be weighed against the privacy interest already found threatened. For the reasons that follow, we think that the answer to this question must be "no."

As already noted, the majority of pre-*Reporters Committee* cases concluded that the information sought in the instant case was available under FOIA, relying on the public interest in promoting effective collective bargaining in the public sector as outweighing any invasion of privacy such disclosure threatened. *See, e.g., Local 1760,* 786 F.2d at 557; *HHS,* 833 F.2d at 1133. *Reporters Committee* stated that in balancing the competing interests the public interest side of the scale must be measured by FOIA's basic purpose to expose agency action to the light of day, not by the purpose for which the information was sought. *See* 489 U.S. at 772, 109 S.Ct. at 1481. The public interest in fostering effective collective bargaining falls outside this central purpose of the FOIA.

The FLRA now advances several related arguments as to why *Reporters Committee* is distinguishable. First, though the list sought has no relationship to public scrutiny of Department activities, it contends that such information may indirectly serve such purpose, that is, enabling the union to contact employees might make the

employees more amenable to candid discussion of the agency's activities. And, it continues, this kind of openness might contribute to shedding light on the Department's actions.

Yet, the unhindered communication contention does not sufficiently satisfy FOIA's core purpose to be considered in assessing whether disclosure is appropriate. While it may be true that the list might provide names that a curious reporter could use in finding out what the government is up to, we have already rejected a similar argument. Compelling disclosure of personal information, that has no relationship to an agency's activities, on so attenuated a basis would inevitably result in the disclosure of virtually all personal information, thereby effectively eviscerating the protections of privacy provided by Exemption 6. *See Ray*, 112 S.Ct. at 549; *Hopkins*, 929 F.2d at 88.

Second, the FLRA insists that in order to harmonize the Federal Service Labor–Management Relations Act, the Privacy Act and FOIA, it is necessary to distinguish *Reporters Committee* on the ground that the request in that case was made solely under FOIA and not pursuant to the Labor–Management Relations Act. Since the Labor–Management Relations Act authorizes disclosure, the FLRA continues, whether it is mandated must be assessed in terms of the purposes animating that Act as well. There are several difficulties with this proposition.

As noted, the Act authorizes disclosure only to the extent "not prohibited by law." Therefore, whether disclosure is warranted requires looking to the Privacy Act and, in turn, to FOIA. As discussed earlier, whether FOIA authorizes disclosure requires consideration—once a privacy interest is implicated—of only those policy goals and values it is designed to foster. Nowhere in the Act does its language indicate that the disclosure calculus required by FOIA should be modified. Nowhere do we find a qualification that the policies of collective bargaining should be integrated into FOIA. *See Treasury*, 884 F.2d at 1453, 1457 (Ginsburg, J., concurring) (the analy-sis takes place wholly within the domain of FOIA).

The FLRA's attempt to refer to values other than those contemplated and accommodated by FOIA merely because another statute directs disclosure runs head-on into the Supreme Court's ruling that "the FOIA invests courts neither with the authority nor the tools" to *"in every case ... engage in balancing, based on public availability and other factors"* to assess whether disclosure under FOIA is required. *Tax Analysts*, 492 U.S. at 155, 109 S.Ct. at 2853 (emphasis added). Rather, whether non-FOIA values are to be considered as relevant factors to weigh against a threatened invasion of privacy is for Congress to decide and require, for instance, in a statute that *itself* (as opposed to one referring to the Privacy Act and/or FOIA) authorizes disclosure. *See id.* at 152, 109 S.Ct. at 2852 (courts are not to add nor detract from FOIA; Congress was aware of and knew how to limit FOIA with respect to overlapping disclosure statutes).

The FLRA further asserts that we abdicate our duty to reconcile conflicting statutory provisions if we fail to harmonize the competing interests of the Act, the Privacy Act and FOIA. This notion is premised on the view that the Act was modeled after and designed to parallel private sector labor law. Unions representing private sector employees are entitled to obtain lists of the employees' names and home addresses. The FLRA believes it inconsistent to distinguish between the two sectors of labor law and that to do so undermines the goals of the Act.

Concededly, private sector labor unions generally may obtain a list of employees' names and addresses. *See, e.g., Prudential Ins. Co. of Am. v. NLRB*, 412 F.2d 77 (2d Cir.), *cert. denied*, 396 U.S. 928, 90 S.Ct. 263, 24 L.Ed.2d 226 (1969). It is also true that the Act is designed to parallel and draws upon principles of private labor law. *See* 5 U.S.C. § 7101(a). Pre-*Reporters Committee* cases focused on this private-public analogy in analyzing disclosure under Exemption 6. *See, e.g., Local 1760*, 786 F.2d at 557 ("the privacy implications of

address release are essentially the same in either the public or private sector").

Even though practice in the private sector bears upon how labor law in the public sector is to be shaped, it still must be remembered that "[the Labor Statute] is not a carbon copy of the NLRA, nor is the authority of the FLRA the same as that of the NLRB." *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 534, 109 S.Ct. 1282, 1287, 103 L.Ed.2d 539 (1989). Nevertheless, putting aside these difficulties, to assert that as a result the courts must harmonize the conflict posed by the intersection of FOIA and the Labor–Management Relations Act misconstrues our role as well as the nature of statutory construction.

While courts are under an "obligation to avoid conflicts between two statutory regimes ... that in some respects overlap," *Pittsburgh & Lake Erie R.R. Co. v. Railway Labor Executives' Ass'n,* 491 U.S. 490, 510, 109 S.Ct. 2584, 2596, 105 L.Ed.2d 415 (1989), that duty is to give effect to each statute insofar as possible. The provisions of the Act, the Privacy Act and FOIA function as they were intended to when interpreted according to their terms. Construing the Act to authorize disclosure only "to the extent not prohibited by law" does not eviscerate its disclosure provisions. Rather, to do so gives vitality to these overlapping statutory provisions in accordance with the congressional design to ensure that the disclosure provisions of the Labor–Management Relations Act do not trump the more important policy objectives of the Privacy Act. Thus, reading the Act in accordance with its unambiguous terms does "give effect to [these overlapping statutes] ... while preserving their sense and purpose." *Lake Erie,* 109 S.Ct at 2596 (quoting *Watt v. Alaska,* 451 U.S. 259, 267, 101 S.Ct. 1673, 1678, 68 L.Ed.2d 80 (1981)).

In addition, where the terms of a statute are unambiguous, our charge is not to modify clearly expressed policy and "to treat alike subjects that different Congresses have chosen to treat differently." *West Virginia Univ. Hosp., Inc. v. Casey,* —— U.S. ——, 111 S.Ct. 1138, 1148, 113 L.Ed.2d

68 (1991). It thus becomes apparent that the conflict which the FLRA asks us to resolve is not one of statutory language, but rather of policy; that, of course, is also not our charge.

Moreover, we note that there is legislative history that arguably supports the proposition that in enacting FOIA Congress sought to require the disclosure here sought. *See* H.Rep. No. 1497, 89th Cong., 2d Sess. 5 (1966), *reprinted in* 1966 U.S.Cong.Code & Admin.News 2418, 2422–23; *see also GTE Sylvania, Inc. v. Consumers Union of the United States, Inc.,* 445 U.S. 375, 385, 100 S.Ct. 1194, 1201, 63 L.Ed.2d 467 (1980). We are loathe to place much reliance on this isolated bit of legislative history, *see Fort Stewart Schools,* 495 U.S. at 648–50, 110 S.Ct. at 2047–49, particularly where that same legislative report—addressing Exemption 6—states that, in precluding disclosure, it is "intended to cover detailed Government records on an individual which can be identified as applying to that individual...." H.Rep. No. 1497, 89th Cong., 2d Sess. 5 (1966), *reprinted in* 1966 U.S.Cong.Code & Admin.News at 2428.

█ Consequently, we hold the purpose of fostering effective collective bargaining in the public sector is not a public interest that outweighs the threatened privacy interest.

### 3. Balancing

Thus, the balance we must perform in this case is itself not difficult. There is a measurable privacy interest that is threatened by the potentially unlimited disclosure of a list of names and addresses which identifies the individuals as federal employees. There is no relevant public purpose to be weighed against that threatened invasion. Hence, *any* invasion of privacy threatened by disclosure—even if it be only unsolicited mailings—is "clearly unwarranted."

### C. *Routine Use*

The alternative "routine use" argument in support of disclosure is readily resolved. The FLRA declares that disclosure is war-

ranted under the Privacy Act's exception "for a routine use as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D)." 5 U.S.C. § 552a(b)(3). "Routine use" is defined as, "with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected." *Id.* § 552a(a)(7).

The Department does not suggest that disclosure of the list is not "compatible with the purpose for which it was collected," but asserts instead that the requested disclosure is not "described under ... (e)(4)(D)." This provision provides that

> "[e]ach agency that maintains a system of records shall ... publish in the Federal Register ... a notice of the existence and character of the system of records, which notice shall include ... each routine use of the records contained in the system, including the categories of users and the purpose of such use."

*Id.* § 552a(e) to 552a(e)(4)(D). The Office of Personnel Management (OPM) is the agency charged with maintaining records of federal employees' names and home addresses. OPM's notice of the routine uses for an employee's personnel records provides that such may be used

> [t]o disclose information to officials of labor organizations recognized under [the Act] when *relevant and necessary* to their duties of exclusive representation concerning personnel policies, practices, and matters affecting working conditions.

49 Fed.Reg. 36,949, 36,956 (Sept. 20, 1984) (emphasis added); *see also* 55 Fed.Reg. 3802, 3839–40 (Feb. 5, 1990).

In *Farmers Home II,* the FLRA concluded that even if disclosure was prohibited under exception (b)(2) of the Privacy Act, it was authorized as a "routine use" because the information was "necessary within the meaning of [the Act]." 23 F.L.R.A. at 794. The FLRA further concluded that "the mere existence of alternative means of communication" was insufficient to justify refusal of the requested information. *Id.* at 796. Consequently, it established a blanket rule that federal employees' names and

addresses were presumptively available to their unions as a "routine use." In so holding, the FLRA refused to defer to OPM's interpretation of its routine use notice advanced in an *amicus* brief. In its *amicus* brief of July 14, 1986 OPM asserted for the first time that disclosure to unions of employees' names and home addresses was not a "routine use" of that information if "adequate alternative means" existed for communicating with those employees.

The FLRA adhered to its *Farmers Home II* decision in *Portsmouth,* finding it "inappropriate[ ] to defer on a fundamental labor law issue" to OPM. 37 F.L.R.A. at 539. It determined that the information is relevant to the union's obligation to represent its members and for the proper functioning of the collective bargaining process, hence it thought disclosure was authorized as a routine use, regardless of the existence of alternative means of communication. *Id.* at 538–539.

In assessing the FLRA's position, we start with the general proposition that an agency's, here OPM's, interpretation of its own regulation that is not plainly erroneous or inconsistent with the language of the regulation generally controls. *See Robertson v. Methow Valley Citizens Council,* 490 U.S. 332, 359, 109 S.Ct. 1835, 1850, 104 L.Ed.2d 351 (1989). The same deference should be accorded OPM's interpretation of its own notice. *See Treasury,* 884 F.2d at 1454. This disposes of the FLRA's contention that its interpretation "represents the best view" of a "routine use" of employee personnel file records. Simply put, it is not our task to choose between the FLRA's and OPM's construction of "routine use." We are constrained to defer to OPM's unless it is "plainly erroneous or inconsistent" with its notice. *See United States v. Larionoff,* 431 U.S. 864, 872, 97 S.Ct. 2150, 2155, 53 L.Ed.2d 48 (1977) (quoting *Bowles v. Seminole Rock Co.,* 325 U.S. 410, 414, 65 S.Ct. 1215, 1217, 89 L.Ed. 1700 (1945)).

Given this deference we cannot say it is unreasonable to interpret "relevant and necessary," as that phrase is used in

OPM's notice, to require more than that the requested information be merely "useful" or "helpful." Simply because employees' names and home addresses are always "necessary" for a union to carry out its collective bargaining responsibilities within the meaning of the Act does not mean that disclosure of such information to the union is "relevant and necessary" as a routine use. This is particularly true in light of the fact that OPM's regulation requires the disclosure to be "relevant and necessary," while the Act only requires the information to be "necessary." It is not unreasonable for OPM to interpret its regulation as requiring a greater showing of need than the Act. To the contrary, the Act's use of "necessary" may sensibly be read to require no more than that the information be "relevant." Because OPM's notice requires the information be *both* "relevant *and* necessary," the interpretation advanced by the FLRA—effectively interpreting "necessary" in both provisions similarly—renders the use of *two* qualifiers in OPM's notice redundant.

The FLRA next asserts that a construction of "routine use" contrary to the Act should not control because it defies the "labor relations origin" of the "routine use" regulation. In support of its argument, the FLRA points out that the Civil Service Commission, OPM's predecessor, allowed disclosure as a "routine use" where "relevant and necessary" for a union to carry out its representational responsibilities. And, further, the determination of whether the information was "relevant and necessary" for those purposes was to be made by "appropriate authorities," which at that time included the FLRA's predecessor.

Although this historical analysis is interesting, it is ultimately unavailing. We recognize that the Act and OPM's "routine use" notice may both have a similar labor law antecedents, but it remains the prerogative and duty of OPM to regulate the establishment and maintenance of official personnel folders. Thus, because OPM may have originally "borrowed" language from its predecessor does not bind it indefinitely to its predecessor's view. *See Chev-*

*ron U.S.A. Inc. v. Natural Resources Defense Council Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (an agency's change in interpretation nonetheless is accorded deference). Further, OPM's *amicus* brief details reasons why "necessity" requires contemplation of adequate alternative means and may not be rejected as an agency change of position taken without a well-considered basis. *See Robertson,* 490 U.S. at 355–56, 109 S.Ct. at 1848–49.

Finally, the FLRA contends that the OPM's interpretation is "litigation-inspired," and therefore entitled to no deference whatever. Occasionally courts decline to defer to an agency's litigation positions, *see, e.g., Ames v. Merill Lynch, Pierce, Fenner & Smith, Inc.,* 567 F.2d 1174, 1177 n. 3 (2d Cir.1977), but the reasons for such hesitancy are not implicated here. We see no reason to refuse deference today to OPM's *amicus* position that was first advanced in 1986 as an agency interpretation. *Cf. Ames,* 567 F.2d at 1177 n. 3 (stressing recent nature of agency position and lack of evidence that present interpretation adopted in past). It is disingenuous to classify OPM's interpretation as "litigation-inspired," if by doing so the FLRA means to imply that OPM's interpretation is unreliable as an indication of OPM's standing view as to what constitutes a "routine use." To the contrary, OPM's interpretation was stated as far back as 1987 by its Director in a letter to the Department of Justice. And, though a formal promulgation of this "new" interpretation has not yet been made, such is not sufficient in the present case to decline to defer to OPM's *amicus* position. OPM's subsequent explicit adoption of the view asserted in its *amicus* brief, coupled with the lack of any proof tending to show it has varied in its position since then, is sufficient to accord it deference.

It follows that the Department records sought are not available under the Privacy Act's routine use exception, absent evidence that alternative means of communication are inadequate. In the instant case no such showing was made, and the FLRA has previously conceded that such alterna-

516

tive means do exist. *See Farmers Home II*, 23 F.L.R.A. at 796. Hence, the routine use exception is not available for the FLRA to avoid the Privacy Act's prohibition against disclosure.

## CONCLUSION

Accordingly, we hold that disclosure of federal employees' names and home addresses to their exclusive bargaining representative is necessary for the union to fulfill its obligations under the Federal Service Labor–Management Relations Act, but such disclosure is prohibited by law because it would result in a clearly unwarranted invasion of personal privacy within the meaning of FOIA's Exemption 6. Disclosure of such information may not be obtained as a routine use either, absent a showing that inadequate alternative means for a union to communicate with its members exist.

The cross-petition for review of the Department of Veteran Affairs is granted, and the FLRA's petition for enforcement of its order of disclosure is denied.