976 F.2d 882
 141 L.R.R.M. (BNA) 2424
 DEPARTMENT OF COMMERCE, BUREAU OF THE CENSUS, Petitioner,
v.
FEDERAL LABOR RELATIONS AUTHORITY, Respondent.
FEDERAL LABOR RELATIONS AUTHORITY, Petitioner,
v.
DEPARTMENT OF COMMERCE, BUREAU OF THE CENSUS, Respondent.
 Nos. 91-2188, 91-2239.
 United States Court of Appeals,
Fourth Circuit.
 Argued May 6, 1992.
Decided Oct. 2, 1992.
 
 Christine N. Kohl, argued (Stuart M. Gerson, Asst. Atty. Gen., Mark B. Stern, on brief), Civil Div., U.S. Dept. of Justice, Washington, D.C., for petitioner.
 Richard Zorn, argued (William E. Persina, Sol., William R. Tobey, Deputy Sol., Arthur A. Horowitz, Associate Sol., on brief), Federal Labor Relations Authority, Washington, D.C., for respondent.
 Before PHILLIPS and SPROUSE, Circuit Judges, and KAUFMAN, Senior United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PHILLIPS, Circuit Judge:
 
 
 1
 Edward Hanlon, formerly an employee of the Bureau of the Census (the Bureau), was discharged on the grounds, inter alia, that he had lodged an excessive number of administrative and judicial employment actions against the Bureau. Upon receiving an informal, written "record of infraction" from his superiors detailing the charges against him, but before he had received any notification of his proposed removal, Hanlon filed with the Federal Labor Relations Authority (FLRA) an unfair labor practice (ULP) charge against the Bureau, claiming that the record of infraction itself constituted an ULP in that it disciplined him for exercising his statutorily protected right to file employment actions. While Hanlon's ULP charge was pending before the General Counsel of the FLRA, the Bureau discharged him, again citing as grounds his frequent resort to adversarial administrative and judicial proceedings. Immediately upon receiving notice of his discharge, Hanlon filed a grievance challenging his removal. After Hanlon filed his grievance, the FLRA's General Counsel issued an ULP complaint on his behalf, upon which an administrative law judge (ALJ) ultimately ruled in Hanlon's favor. The Bureau appealed the ALJ's decision to the FLRA, arguing that, because Hanlon's ULP complaint and his grievance were based on essentially the same factual predicate and legal theory, the ULP charge was nothing more than an indivisible part of his ultimate challenge to his removal. The Bureau further contended that because the Merit Systems Protection Board (MSPB) has exclusive jurisdiction to entertain challenges to the removal of federal employees, the ALJ and FLRA were without jurisdiction to entertain Hanlon's case, and their rulings were invalid. The FLRA rejected the Bureau's argument, and sustained the jurisdiction and merits of the ALJ's ruling. Because we agree with the Bureau that Hanlon's initiation of a grievance procedure challenging his removal subsumed his earlier-filed ULP charge, we hold that Hanlon must bring his entire administrative claim under an "MSPB proceeding," see discussion infra note 1, and we vacate the FLRA's decision to the contrary.
 
 
 2
 * Although Edward Hanlon's job hangs in the balance, this dispute, as it is laid before us, is between the FLRA, which contends that it has authority to adjudicate Hanlon's ULP challenge to his record of infraction and letter of proposed removal, and the Bureau, which contends that, because Hanlon ultimately challenges an "adverse employment action"--his discharge from employment--he is constrained to bring his entire challenge under the MSPB procedure. To understand the context of this appeal, we must briefly review the statutory scheme that underlies the parties' contentions.
 
 
 3
 In 1978 Congress enacted the Civil Services Reform Act (CSRA) to replace the prior "patchwork" system of laws governing federal employment with "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." United States v. Fausto, 484 U.S. 439, 445, 108 S.Ct. 668, 672, 98 L.Ed.2d 830 (1988). Prior to CSRA, federal employees could bring employment actions in a variety of administrative and judicial forums, sometimes leading to confusing and contradictory results. Under the simplified scheme provided by Congress, employment matters that involve employees' rights to engage in union-related activities generally may be brought before the FLRA as ULP charges, while matters involving hiring, firing, "failure to promote," and the like, are delegated generally to the jurisdiction of the MSPB.
 
 
 4
 Under Chapter 71 of CSRA, it is an ULP for any federal government agency, inter alia, to "interfere with, restrain or coerce any employee in the exercise by the employee of any right" granted by the Chapter. 5 U.S.C.A. § 7116(a)(1) (1980). One such union-related right is to be free from discipline for filing "a complaint, affidavit, or petition...." § 7116(a)(4). A victim of an alleged ULP may petition the General Counsel of the FLRA, and, after investigation, the General Counsel may conduct hearings to resolve the employee's complaint. §§ 7118, 7105(a)(2)(G). Once it determines that a governmental employer has committed an ULP, the FLRA is empowered to order broad remedial action forbidding the agency to engage in similar activity as to all of its employees. See § 7501(g)(3); National Treasury Employees Union v. Federal Labor Relations Authority, 910 F.2d 964, 967 (D.C.Cir.1990). Judicial review of FLRA decisions may be had in either the U.S. Court of Appeals for the circuit in which the aggrieved party resides or conducts business, or in the U.S. Court of Appeals for the District of Columbia. § 7123(a).
 
 
 5
 CSRA precludes the FLRA from adjudicating certain types of employment actions. Specifically, "issues which can properly be raised under an appeals procedure may not be raised [before the FLRA] as unfair labor practices...." § 7116(d) (first sentence). The "appeals procedure" relevant to this case is provided by the Merit Systems Protection Board (MSPB), which, under CSRA, is granted responsibility for adjudicating employees' appeals from various types of "adverse personnel actions." § 7513(d). The adverse personnel actions over which the MSPB has exclusive jurisdiction, include: "(1) a removal; (2) a suspension for more than fourteen days; (3) a reduction in grade; (4) a reduction in pay; and (5) a furlough of thirty days or less." § 7512 (emphasis added).[1] Decisions rendered under the MSPB procedure are reviewable only by the United States Court of Appeals for the Federal Circuit. § 7703(b)(1).
 
 
 6
 Edward Hanlon was employed as a statistician/demographer by the Bureau of the Census, an agency of the Department of Commerce, between 1978 and 1988. From 1985 to 1987 he was actively engaged in union organizational and representational activities of which the Bureau was aware. During his three and one half years as a union organizer Hanlon filed fifty-five ULP charges against the Bureau on his own behalf. Of those charges, four resulted in final FLRA decisions in his favor, and an undetermined number of charges were withdrawn after negotiation. The General Counsel of the FLRA agreed to pursue a total of twelve of his claims, and expressly declined to pursue ten, apparently finding that they were without merit. During the same time period, Hanlon brought six lawsuits against his employer, and filed dozens of Freedom Of Information Act requests.
 
 
 7
 In November of 1987 Hanlon's supervisor issued him a written "record of infraction," listing four charges against him: (1) unauthorized use of the Bureau's computer equipment; (2) unauthorized conduct of personal business while on duty status; (3) insubordination; and, (4) misuse of administrative/judicial procedures between 1985 and 1987 "by filing numerous actions including Privacy Act Requests, FOIA requests, ULPs, grievances and lawsuits with the intent and effect of impeding the efficiency of the agency...." Joint Appendix at 28-29. A record of infraction acts as warning to an employee, and is not statutorily required as a precursor to discharge. Immediately after receiving the record of infraction Hanlon filed a new ULP charge with the FLRA, alleging that the Bureau had committed an ULP by disciplining him for exercising his statutorily protected right to file ULP charges and other employment actions.
 
 
 8
 In early December of 1987, before the FLRA General Counsel had taken action on Hanlon's most recent ULP charge, he received from the Bureau a letter of proposed removal, listing as grounds for removal the same four charges that appeared in the earlier record of infraction. A letter of proposed removal is a statutorily mandated precursor to dismissal of a federal employee in Hanlon's class. § 7513(b)(1).
 
 
 9
 Hanlon amended his earlier-filed ULP charge to add a claim that the letter of proposed removal constituted an ULP because it was grounded in part on his statutorily protected right to file ULP charges and grievances. In addition to alleging that the letter interfered with his own rights, Hanlon claimed in his amended ULP charge that the Bureau's actions interfered with the rights of all Bureau employees.
 
 
 10
 On January 8, 1988, Hanlon was removed from his position. Three days later he filed a grievance challenging his removal. Because removal from employment is an "adverse employment action," see § 7512, Hanlon was constrained to challenge it under the MSPB procedure. However, by so grieving his removal, he initiated a second administrative procedure: the first, his ULP charge, was aimed at the events leading up to his discharge, the second, his grievance, was aimed at his actual discharge.
 
 
 11
 In February of 1988, after Hanlon's removal, and after he had initiated a MSPB procedure, the FLRA's General Counsel issued an ULP complaint alleging that the Bureau's references to Hanlon's earlier filings of ULP complaints violated the command of § 7116(a)(1) of CSRA that no government agency "interfere with, restrain, or coerce any employee in the exercise by the employee of any right under this chapter." Sitting in judgment on Hanlon's ULP claim, an administrative law judge (ALJ) rendered a decision in his favor, rejecting, among other things, the Bureau's contention that the FLRA was jurisdictionally barred under § 7116(d) from entertaining Hanlon's ULP charge, and that, once the Bureau initiated discharge procedures against Hanlon, his sole remedy lay in the MSPB procedure. The ALJ agreed with Hanlon that although his ultimate removal was the sort of "adverse personnel action" over which the MSPB has exclusive jurisdiction, see § 7116(d) (first sentence), his ULP charge did not challenge his removal, rather, it challenged only the initial record of infraction and letter of proposed removal. Because the record of infraction and the letter of proposed removal were divisible from Hanlon's ultimate removal, and because the MSPB did not have jurisdiction to review a challenge to either of those preliminary actions, see Cruz v. Department of Navy 934 F.2d 1240, 1243 (Fed.Cir.1991) (MSPB has no jurisdiction to consider proposals to remove because they are not listed in 5 U.S.C. § 7512 and are thus not appealable adverse actions in themselves), both were properly adjudicated by the FLRA as ULP complaints.
 
 
 12
 The ALJ issued a cease and desist order which included directions to the Bureau to remove from Hanlon's record of infraction and letter of proposed removal any reference to his earlier filing of ULP charges and grievances. The ALJ's order explicitly stated that the Bureau was free to proceed with its discharge of Hanlon, but that in doing so it could not rely on information regarding his earlier employment actions.
 
 
 13
 Sitting in review of the ALJ's administrative ruling, the FLRA affirmed, finding that jurisdiction lay in the FLRA to consider Hanlon's ULP claim, and that the Bureau had committed an ULP against Hanlon. The Bureau petitioned for review, arguing that because Hanlon's ULP complaint is inextricably linked to his MSPB challenge to his removal, exclusive administrative jurisdiction over his entire case lies in the MSPB, requiring invalidation of the ruling already rendered by the ALJ and affirmed by the FLRA.[2]
 
 II
 
 14
 A legal determination of the FLRA should be set aside by this court only if "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law." 5 U.S.C. §§ 7123(c) and 706(2)(a); United States Department of Health and Human Serv. v. Federal Labor Relations Authority, 833 F.2d 1129, 1133 (4th Cir.1987). The FLRA is entitled to "considerable deference when it exercises its special function of applying the general provisions of [CSRA] to the complexities of federal labor relations." Bureau of Alcohol, Tobacco and Firearms v. Federal Labor Relations Authority, 464 U.S. 89, 97, 104 S.Ct. 439, 444, 78 L.Ed.2d 195 (1983). Reviewing courts, however, "must not rubber-stamp ... administrative decisions that they deem inconsistent with a statutory mandate or that frustrate the congressional policy underlying a statute." Id.
 
 
 15
 As noted above, prior to CSRA, administrative and judicial review of federal government personnel actions was unpredictable and inconsistent. "The general perception was that 'appeals processes [were] so lengthy and complicated that managers [in the civil service] often avoid[ed] taking disciplinary action' against employees even when it was clearly warranted." Fausto, 484 U.S. at 445, 108 S.Ct. at 672 (quoting S.Rep. No. 95-969, p. 9 (1978)). One important element of Congress's plan to simplify federal employees' personnel actions was the
 
 
 16
 primacy of the MSPB for administrative resolution of disputes over adverse personnel actions, and the primacy of the United States Court of Appeals for the Federal Circuit for judicial review. This enables the development, through the MSPB, of a unitary and consistent Executive Branch position on matters involving personnel action, avoids an unnecessary layer of judicial review in lower federal courts, and encourages more consistent judicial decisions.
 
 
 17
 Id. at 449, 108 S.Ct. at 674 (citations omitted). In accordance with its desire to streamline the administrative adjudication of personnel matters and give the MSPB power over adverse personnel actions, Congress promulgated § 7116(d), which states that
 
 
 18
 [i]ssues which can properly be raised under an appeals procedure may not be raised as unfair labor practices prohibited under this section. Except for matters wherein, under section 7121(e) and (f) of this title, an employee has an option of using the negotiated grievance procedure or an appeals procedure, issues which can be raised under a grievance procedure may, in the discretion of the aggrieved party, be raised under the grievance procedure or as an unfair labor practice under this section, but not under both procedures.
 
 
 19
 The import of the second sentence of this provision is clear: federal employees generally have the right to choose between bringing their employment-related complaints as ULP charges, or as grievances under the employees' negotiated grievance procedure. The second sentence also clearly mandates that once an employee has chosen between a negotiated grievance procedure and an ULP procedure, the other avenue is foreclosed. See U.S. Dep't of the Army, Army Fin. and Accounting Center, Indianapolis, Ind. and American Federation of Government Employees, Local 1411 (Army Finance), 38 FLRA 1345 (1991), enforced sub nom. American Federation of Government Employees, AFL-CIO, Local 1411 V. Federal Labor Relations Authority, 960 F.2d 176 (D.C.Cir.1992).
 
 
 20
 However, the second sentence of 7116(d) does not afford a choice of administrative forums to all aggrieved employees. Excluded from the flexibility of the second sentence are "matters wherein, under section 7121(e) and (f) of this title, an employee has an option of using the negotiated grievance procedure or an appeals procedure." In the instant case, Hanlon's removal falls within this exception: it was an "adverse personnel action," and thus was a matter that he could either appeal to the MSPB or pursue via a negotiated grievance procedure. As such, it was a matter "under section 7121(e) and (f)," and fell within the exception to the second sentence of § 7116(d). Hanlon therefore did not fall into the general category of those who may choose between pursuing an employment action under the grievance procedure or as an ULP.
 
 
 21
 The first sentence of 7116(d) dictates the appropriate forum for Hanlon's challenge to his removal. Because his discharge was one of the adverse employment actions enumerated in § 7512, his challenge to his discharge "can be properly raised under an appeals procedure," (i.e., the MSPB procedure), and thus "may not be raised as an unfair labor practice." See § 7116(d) (first sentence).
 
 
 22
 Hanlon and the FLRA concede that he had no choice of administrative forum when it came to challenging his ultimate removal: under the first sentence of 7116(d) he was constrained to bring his discharge challenge under the MSPB procedure. They contend, however, that Hanlon's earlier challenges to the initial record of infraction and letter of proposed removal were matters sufficiently separate from his ultimate removal that, in his challenge to those initial administrative actions, he retained the option, afforded by the second sentence of § 7116(d), to bring his challenge either as an ULP or as a grievance. In the instant case, Hanlon and the FLRA claim, he chose to present his challenge as an ULP, the ULP was decided in his favor, and that favorable ruling should stand.
 
 
 23
 Thus, as Hanlon and the FLRA frame the argument, the central issue to be decided on appeal is whether Hanlon's earlier challenges to the record of infraction and letter of proposed removal are sufficiently discrete from his challenge to his ultimate removal, that he may maintain them in two separate administrative proceedings. We believe that both Congress's clear intent, as reflected in the language and statutory history of CSRA, and prior decisions of the FLRA, compel a finding that the actions are inseparable, and, therefore, that sole jurisdiction lies in the MSPB.
 
 
 24
 In Army Finance, a Union filed an ULP on an employee's behalf, challenging a government agency's proposed suspension of the employee. Later, following the employee's suspension, the employee initiated a grievance procedure. The government agency contended that, under the second sentence of § 7226(d) the employee was barred from initiating a grievance procedure, given that the employee had already elected to challenge the proposed suspension in an ULP charge. A central issue in the case was whether the employee's grievance over an actual suspension presented the same factual and legal issues as the earlier ULP charge relating to the proposed suspension. The FLRA found that the same issue was raised in both procedures and that the later-filed procedure was therefore jurisdictionally barred under § 7116(d):
 
 
 25
 [W]e do not believe that the fact that the suspension was proposed at the time of the ULP charge was filed, but was definite when the grievance was filed, is dispositive. In determining whether the procedures involved the same issue, the [FLRA] looks at whether the ULP charge arose from the same set of factual circumstances as the grievance and the theory advanced in support of the ULP charge and the grievance are substantially similar.
 
 
 26
 Army Finance, 38 FLRA at 1350-51. Although Army Finance focused on the second sentence of 7116(d), whereas the instant case focuses on the first sentence, the bedrock logic of the Army Finance holding is transferable: an employee may not separate a proposed adverse personnel action from an actual adverse personnel action when both are based on the same underlying facts and legal theories.
 
 
 27
 In Hanlon's case there is no doubt that the essential issue presented in his ULP claim was in almost every respect the same as the issue presented in his later grievance. In both procedures he objected to the Bureau's reliance on his alleged misuse of administrative and judicial personnel procedures, and in both he claimed that such reliance violated his right to seek redress for wrongs perpetrated by his employer.
 
 
 28
 The FLRA argues that the legal bases of Hanlon's two administrative procedures were different. The FLRA notes that Hanlon's ULP complaint relied explicitly on § 7116(a), which lists actions that an employee may challenge as unfair labor practices, while his MSPB challenge to his removal was legally grounded on § 7701, which sets forth MSPB procedures.
 
 
 29
 We do not find dispositive the fact that Hanlon cited one statutory provision for his ULP complaint and another for his MSPB procedure. All that this reveals is the obvious: that the statutory provisions governing the adjudication of ULPs before the FLRA and grievances under the MSPB procedure are different. The fact that the separate forums are governed by separate statutory provisions cannot change the essential fact that the legal arguments Hanlon presented to each body were substantially the same.
 
 
 30
 The FLRA also contends that the legal issues presented in Hanlon's ULP claim were distinct from those presented in the MSPB procedure in that the ULP complaint was lodged on behalf of all Bureau employees, while the MSPB procedure raises only Hanlon's rights as an individual employee.
 
 
 31
 A similar contention was raised and rejected in Army Finance. There, the Union filed an ULP charge, claiming that the government agency's disciplinary action of an employee would have a chilling effect on Union activities. After the FLRA resolved the ULP in favor of the agency, the employee in her individual capacity tried to grieve the discipline. Pointing to § 7116(d), the FLRA determined that the employee was barred from filing a grievance, since the factual predicate and legal theories of her argument were the same as those already raised by the Union in the ULP procedure. The FLRA specifically found that "while portions of the ULP charge appear to address the Union's institutional interest, it is clear that the ULP charge was not filed solely in the Union's institutional interest." Army Finance at 1352-53. The FLRA concluded that the individual employee was actually the aggrieved party in the ULP action, and, therefore, that she could not maintain a second administrative action in the form of a grievance. See also U.S. Department of Justice, Immigration and Naturalization Service and American Federation of Government Employees, 20 FLRA 743 (1985) (although ULP charge formally filed by Union, it was drawn to reflect individual's complaint, and was thus substantially the same as individual's later grievance).
 
 
 32
 Similarly, an examination of Hanlon's complaint reveals that, although in his amended ULP charge he invoked the rights of all employees, the charge focused on his individual right, and thus was essentially the same as his later grievance under the MSPB procedure.
 
 
 33
 Finally, we are unswayed by the policy argument put forward by the FLRA. The FLRA contends that to reject its position in this case will be to leave federal employees without a means of challenging preliminary disciplinary actions such as records of infraction and letters of proposed removal. We disagree.
 
 
 34
 Nothing in our ruling prevents employees from lodging ULP charges to complain about unfair disciplinary actions. Only where those initial disciplinary actions ripen into full-blown "adverse employment actions" will sole jurisdiction vest in the MSPB under the first sentence of § 7116(d). Moreover, where the government agency does initiate a full-blown removal procedure, and where jurisdiction thus vests in the MSPB (or in the negotiated grievance procedure), the aggrieved employee may raise in the MSPB procedure the exact arguments that he would have raised before the FLRA; for, although the MSPB cannot adjudicate an ULP charge per se, Barnes v. Small, 840 F.2d 972, 981 (D.C.Cir.1988), facts underlying an ULP charge may also be challenged under the MSPB procedure as "prohibited personnel practices." See § 2302. In the instant case, for example, Hanlon's challenge to his record of infraction and letter of proposed removal may be raised in an MSPB procedure under § 2302(b)(9)(a), which prohibits personnel action due to the "exercise of any appeal, complaint or grievance right granted by any law, rule or regulation." In other words, Hanlon and other employees can find equivalent relief before the MSPB and should not be heard to complain that the FLRA is the sole forum capable of granting meaningful relief.
 
 III
 
 35
 We find that Hanlon deviated from Congress's intent, as expressed in CSRA, when he attempted to maintain two simultaneous administrative challenges to his removal, each relying on essentially the same facts and legal arguments. If permitted to pursue both claims, Hanlon's legal arguments would be tried to two separate forums, and would follow separate paths of appeal--exactly the result that Congress intended to avoid when it streamlined federal employment law in CSRA. Accordingly, we vacate the FLRA's decision and remand to that Agency with directions to dismiss Hanlon's ULP complaint for lack of jurisdiction to entertain it.
 
 
 36
 SO ORDERED.
 
 
 
 [1]
 If a government agency's collective bargaining agreement provides a negotiated grievance procedure, the government employee who challenges an adverse personnel action may, in his discretion, seek a remedy from either the MSPB, or, as an alternative, under the negotiated grievance procedure. § 7121(e)(1); Cornelius v. Nutt, 472 U.S. 648, 652, 105 S.Ct. 2882, 2885, 86 L.Ed.2d 515 (1985). In the instant case, Hanlon chose to pursue his challenge to his removal under the negotiated grievance procedure. For the sake of simplicity, we will refer to both of these options collectively as "the MSPB procedure."
 
 
 [2]
 As an alternative to its jurisdictional argument, the Bureau contends the ALJ erred on the merits of Hanlon's claim by finding that the Bureau committed an ULP when it censured Hanlon for his frequent use of administrative processes. Because we find that the FLRA and the ALJ lacked jurisdiction to decide Hanlon's ULP charge, we decline to address the merits of the issue